[No. 3331.]

## NORTHERN COLORADO IRRIGATION CO. V. POUPPIRT.

1. IRRIGATION—*Duty of Irrigating Company.*  A corporation operating a canal or ditch for conveying water for irrigation to the proprietors of the lands thereunder is bound to carry and deliver water to the class of consumers named in its certificate of incorporation, and the service must be performed for a reasonable maximum charge, to be fixed by the board of county commissioners, upon proper application made.

2. —— *Right of Consumer.*  The carrier may not exact of the consumer a *bonus*, as a condition of performing its duty.  The land owner who has purchased water from such corporation for one or more years is entitled to continue such purchase in subsequent years, and the carrier is under a corresponding duty to carry and deliver the water.

3. —— —— *How Affected by Abandonment of a Prior Contract.* Plaintiff's grantor of certain lands had purchased of defendant "the right to receive and use water" from defendant's canal, for the irrigation of such lands.  Nothing in the contract specifically required the grantor to continue for any definite time in the exercise of his right, nor was there in the conveyance under which plaintiff held the lands, any condition or requirement that he should observe or perform any of the conditions of the contract under which water had been obtained.  Held that a provision of his contract that upon failure of the grantor to pay the annual rental, he should surrender all right or interest thereby created, did not necessarily involve a surrender of the statutory right to continue to purchase water for the same land, and that notwithstanding plaintiff's repudiation of the contract, his right under the statute was undeniable.

4. —— *Order of County Commissioners Prescribing Rate of Charge—Effect.*  The order of the county commissioners, made upon proper application, prescribing the rate to be charged by

an irrigating company, for the carriage and delivery of water, is binding upon the corporation until relief has been afforded in some appropriate proceeding.

5. —— —— *Certainty Required in the Order.* The order of the county commissioners fixed the maximum rate to be charged by an irrigation company "for any irrigation season," "at $1.00 per acre." The volume of water which the company was required to furnish was not prescribed. The consumer had for many years taken water from the same ditch, under a contract which prescribed the quantity as, "sufficient for the production of good average crops, under skillful irrigation, not to exceed" a certain prescribed volume. The order of the county commissioners was construed as based upon the long usage prevailing between the parties, and as therefore sufficient, notwithstanding its failure to specify the volume to be delivered.

6. PLEADING—*What Must Be Especially Pleaded.* Action against an irrigating company for refusing to furnish water to one entitled to it. Plaintiff, in order to obtain the water, had tendered a rate in excess of that prescribed by the county commissioners. Held that without pleading this, he was entitled to prove it, in order to relieve himself of the imputation of failing to do what was reasonable, in order to minimize his injury.

7. —— *Construed.* Complaint held sufficient to admit evidence of a former adjudication of the rights asserted by plaintiff.

8. DAMAGES—*Duty of Plaintiff to Minimize.* One threatened with injury by the misconduct of another must do what he reasonably can to reduce his loss; but no case holds that he is required to do what is unreasonable, or what would occasion to him serious embarrassment, financial or otherwise.

9. —— —— *Question for Jury.* And the question what was reasonably required of the plaintiff is for the jury.

*Appeal from Denver District Court.* HON. CARLTON M. BLISS, Judge.

Mr. HUGH BUTLER, for appellant.

Messrs. CRUMP & ALLEN, and Mr. CLIFFORD W. MILLS, for appellee.

KING, J., delivered the opinion of the court.

The appellee as plaintiff brought his suit in the district court in and for the City and County of

Denver to recover from the defendant (appellant here) damages in the sum of $4,760 for its alleged wrongful refusal to furnish water for irrigation purposes. Verdict and judgment were given in favor of plaintiff for the sum of $2,300.

The complaint alleged that defendant was a Colorado corporation engaged in carrying water for irrigation to the premises of consumers along the ditch known as The Highline Canal, which was owned and operated by the defendant; that defendant was a common or quasi-common carrier of water, for hire, for irrigation purposes, and that as such, and for a reasonable consideration, it was bound to carry water from the South Platte river, and deliver the same to those entitled to make beneficial use thereof for irrigating lands under the canal; that plaintiff was the owner of a certain 40-acre tract of land under said canal, in Adams County, through which county the canal passed; that such land was arid, required irrigation, and had been irrigated from said canal since the year 1886; that defendant, as carrier, and for an annual compensation paid to it by plaintiff or his grantors, had furnished water for said land continuously from 1886 until the year 1904; that by reason of such use of the water by plaintiff and his grantors, plaintiff had and owned a water-right for said land by which defendant was required to furnish a sufficient quantity of water out of the said canal, when the same could be obtained, to irrigate said land, and that neither plaintiff nor his grantors had sold, forfeited or abandoned said water-right, or lost it by process of law, or otherwise, or "ceased to take water from said canal with the purpose or intent of procuring

the same from any other source of supply''; that about May 18th, 1904, the board of county commissioners of Adams County, in a proceeding brought for that purpose and to which the defendant was a party, fixed the maximum rate to be charged by the defendant for carrying water through its canal in Adams county, for any irrigation season, including the season of 1904 and thereafter, at $1 per acre, and further found that the rate theretofore charged by the defendant, to wit, $1.75 per acre, was unjust and unfair; that plaintiff tendered to the defendant the sum of $1 per acre as fixed by said board, and demanded water for his said lands for that year, and again in 1905 made like tender and demand, both times in writing, all of which the defendant refused; that a sufficient quantity of water was in the stream and could have been obtained and delivered by the defendant except for its neglect and refusal. Plaintiff also alleged that after the respective tenders and demands in each of said years, and defendant's refusal as aforesaid, mandamus proceedings were instituted, in each of which, after hearing, defendant was ordered to deliver water to plaintiff upon tender of $1 per acre; but notwithstanding said writs of mandamus the defendant did not deliver the water in sufficient quantity or early enough in the season to save or mature crops; that by reason of defendant's failure to deliver water, plaintiff suffered damage and injury by failure of crops, and permanent injury by the destruction of the alfalfa roots. The complaint contained two causes of action, one for the year 1904 and one for the year 1905.

The answer denied that defendant was a common carrier for hire, or that it had no ownership or

interest in the water carried, but alleged that it had the right to take and divert the water from the river and deliver it to certain persons by virtue of certain contracts theretofore made and then in force; denied that plaintiff, by reason of previous use of the water, acquired or owned a water-right for his land, or that he had any right to require defendant to furnish water to him; admitted the proceedings before the board of county commissioners and the order fixing the maximum rate, as alleged in the complaint, but alleged that the order made by said board was void, because such order *did not prescribe the amount of water* which the defendant should be required to furnish to any applicant; admitted the tender alleged by plaintiff for each of said years, but averred that the demand was not in compliance with the order of the board of county commissioners, because it was for not less than one cubic foot of water per second for each 53 acres, and of a date of priority not later than the year 1886; admitted that after its refusal of plaintiff's demands, writs of mandamus issued commanding it to furnish water upon payment or deposit of $1 per acre, as alleged in the complaint, but averred that such writs, and each of them, were erroneously and wrongfully issued, and were void for want of jurisdiction in the premises.

The foregoing states substantially the issues as made by the pleadings, so far as necessary to be stated.

The evidence upon the part of plaintiff showed that he purchased the land from Mary Giesler, his deed being dated May 19th, 1897, by which she conveyed to him one-half section of land, including the forty acres described in the complaint, "together

with all water-rights in The Northern Colorado Irrigation Company," and that plaintiff had owned the land since that date; that the canal runs through the land, over 200 acres of it being under the ditch, but the water-right being for forty acres only, and that this land was set to alfalfa; that the water had been used on that place for 19 years or more, and was obtained through the ditch belonging to the defendant; that plaintiff had used water upon said land, each year, since 1897; that up to and including the year 1903, he had paid $1.75 per acre for the use of said water; that in 1904 plaintiff made the tender as alleged in the complaint, which was refused, and that thereupon he instituted the mandamus proceedings and secured the writ as set forth in the complaint. The evidence tended to show that the irrigation season begins about May 1st, and that after the first week in July there is but little water in the ditch; that there was plenty of water in the canal from about May 1st to the end of the season, the flow that year being average and sufficient to have produced an average crop upon plaintiff's land if the water had been delivered. The average crop for the years 1897 to 1901, inclusive, was shown as a basis upon which to measure the loss sustained by failure to receive water in 1904 and 1905. Upon the question of the demand for water and tender of carriage fee, the evidence shows that plaintiff appeared at the home office of the company in Denver, made a tender of $1 per acre, and upon defendant's refusal to accept, offered to pay and made tender of $1.75 per acre, the rate then charged by the company, but made such offer under protest. The company refused to receive the fee of $1 per acre, and

also refused to accept the tender of $1.75 per acre under protest, nor unless plaintiff should sign a certain written application in form required by the company of applicants under its contracts for water-rights, and specifying that the application was made, and the water furnished, if at all, under the terms of such water-right contracts, which contained waiver of liability upon the part of the ditch company, authority for it to pro rate the water in times of scarcity, and provided for the submission of disputes to the superintendent of the company whose decision should be final, forfeiture, etc.  Plaintiff was willing to pay the fee of $1.75 under protest, subject to a determination by the court thereafter, but refused to sign the application, and notified the defendant that he was not claiming, and would not claim, under the water deed or contract between the company and his grantor, but that he claimed solely by virtue of his right, under the statutes, acquired by appropriation by his grantor, and the continuous use of the water by such grantor and himself.  This ended negotiations for water.  The mandamus proceedings required considerable time, so that when the peremptory writ was issued each year, the irrigation season, or a great part of it, had passed.

During the progress of the trial plaintiff offered in evidence the files, orders, judgment, etc., in the mandamus proceedings, for the purpose of showing that certain issues in the instant case, to wit, the right of plaintiff to receive and the duty of defendant to deliver water for the years 1904 and 1905, were *res judicata* in favor of the plaintiff.  Objection made by the defendant to the reception of these

files and orders, for the reason that no such issue was made by the pleadings, was overruled.

Defendant offered no testimony with the exception of a certain contract or water deed, which was offered upon and as a part of the cross-examination of the plaintiff, and received by the court over plaintiff's objection.

The briefs filed by counsel for appellant present an interesting, able and elaborate discussion of all the objections raised by the assignments of errors, including questions pertaining to the character of the defendant as a carrier, the status of the holders of its contracts or deeds for water-rights, and their assigns, and the duty of such carrier to convey and deliver water to consumers, such as the plaintiff, at the rate fixed by the board of county commissioners. The argument is a protest against the law pertaining to such carriers as declared by the supreme court. Many of these questions seem to have been fully settled by decisions of that court, a number of which have been in cases to which the appellant herein was a party, and adversely to the contention of appellant's counsel, and therefore need not be reconsidered at this time. For instance, there is no question that under the constitution, statutes and decisions, the defendant was required to carry and deliver water to the class of consumers named in the certificate of its incorporation, whether, as a question of terminology, it may be called a common carrier, a quasi-common carrier or a quasi-public carrier; nor that this service must be performed for a reasonable maximum charge to be fixed by the board of county commissioners upon proper application, and that when such rate has been fixed, it is

binding upon the company until relief has been af-
forded in some appropriate proceeding; that such
carrier may not exact a bonus as a condition prece-
dent to the right of a consumer to secure water;
that the land owner who has purchased water from
such carrier, for one or more years, has the right
to continue such purchase, and that a corresponding
duty to deliver devolves upon the carrier. *Const.*,
Art. 16, sec. 8; *Mills' Ann. Stats.*, secs. 570, 2297;
*Golden Canal Co. v. Bright,* 8 Colo. 144; *Wheeler v.
Northern Colo. Irr. Co.,* 10 Colo. 582; *South Boulder
etc. Ditch Co. v. Marfell et al.,* 15 Colo. 302; *North-
ern Colo. Irr. Co. v. Richards,* 22 Colo. 450; *North-
ern Colo. Irr. Co. v. Pouppirt,* 47 Colo. 490.

The courts have not decided that a consumer
of water, by contract with such carrier, may not so
bind himself as to waive and lose his statutory and
constitutional right to purchase water, irrespective
of the contract, although there is a strong intima-
tion to that effect in some of the authorities. The
word ''purchase'' is used herein in the sense that
it is held to have been used in the statute, namely,
the right of the consumer to require the carrier to
furnish the water upon payment of the proper
charge for transportation.

(1)  In oral argument counsel for appellant
limited his discussion chiefly to the claim that the
cause of action was based upon a tender by plaintiff
of $1 per acre, the maximum rate fixed by the board
of county commissioners, while the cause was tried
upon the tender of $1.75 per acre, the rate demanded
by the defendant, that said tender was not admiss-
ible in evidence because not pleaded, and that it
constituted a variance; and to the further contention

that the judgment for plaintiff cannot be sustained for more than nominal damages, for the reason that plaintiff might have saved himself from substantial damages by complying with the company's demands. It is true that the tender of the rate charged by the defendant was not pleaded. It was not necessary that it should be. The cause of action was based upon a tender of an amount fixed by the board of county commissioners, as provided by law, and the cause of action was established. The tender of the amount charged by the defendant was offered and received, with other testimony, to show the effort made by plaintiff to save himself from injury, and did not constitute variance from the cause of action set forth in the complaint.

(2) The most serious question raised by the assignments of errors and discussed by appellant, is, that plaintiff could have saved himself from any substantial damage by paying to the defendant an additional sum of money to that tendered, amounting to not more than $60 for the two years during which plaintiff's alleged loss was sustained, and therefore the judgment should not be affirmed. There is no rule of law better established than that which declares that in case an injured party seeks to recover damages from another, and such party, by some reasonable act on his part, might have lessened or prevented the loss for which he seeks to hold the other, the law requires the performance of that act. This rule is expressed in 1 Sutherland on Damages, sec. 88, 3rd ed., as follows: "The law imposes upon a party injured by another's breach of contract or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury

as light as possible. If by his negligence or wilfulness he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him.'' And if an injured party can indemnify himself by a moderate expenditure of money, or the expenditure of a sum which is trifling as compared with the loss which he would otherwise suffer, he is legally bound so to do, and the reasonableness of such expenditure is measured by comparing the amount of his alleged damage with the sum necessary to have prevented the same. *Lloyd v. Lloyd,* 13 Atl. 639; *Sweeney v. Montana etc. Ry. Co.,* 65 Pac. 912, and cases cited. There is no case, however, to our knowledge, which requires the injured party to do anything unreasonable, or which would seriously embarrass him financially or otherwise.  All that is required of him is to make a reasonable effort to save or reduce the loss. Only such consequences as result from his own wilful failure or gross neglect to use timely and reasonable caution to prevent an extension or increase of the loss or injury, would fall upon him. In this case it may be that if the plaintiff could have saved himself from all substantial damages by the mere payment of the additional sum of money required by the defendant, upon his failure so to do, the damages which he could recover would be nominal only, limited perhaps to the additional amount he would have been required to pay in order to secure the water. *Lloyd v. Lloyd, supra.* But it is not clear that in this case it would be reasonable to require plaintiff to pay defendant's charge without protest, to sign the written application and accept receipts referring to the contract, which plaintiff feared was

an attempt to place him in a position where defendant could successfully claim an estoppel. In addition to his offer to pay under protest, plaintiff instituted and prosecuted to a successful conclusion, each · year, his suits for writs compelling the defendant to furnish him water; and the evidence further shows that such proceedings were made necessary in subsequent years, notwithstanding the said writs. Under the circumstances defendant's demands may have been unreasonable and arbitrary. However, the law is well settled that it is a proper question for the jury to determine what reason would have required the injured party to do or perform, in the light of all the facts in the case. *Sweeney v. Montana etc. Ry. Co., supra.* That question was submitted to the jury under appropriate instructions, and its finding will be regarded as conclusive.

(3) It does not appear that the order made by the board of county commissioners of Adams county, fixing the maximum rate, was void, as contended by appellant, for uncertainty in prescribing the amount of water which the defendant should be required to furnish an applicant, nor that the demand made by plaintiff was not in compliance with such order. Section 2297 Mills' Ann. Stats. provides that any person who shall have purchased and used water for irrigation, for lands occupied by him, · from any ditch or reservoir, and shall not have ceased to do so for the purpose and with intent to procure water from some other source of supply, shall have a right to continue to purchase water to the same amount for his lands, on paying or tendering the price thereof fixed by the county commissioners. It is shown that under the contract, by the

terms of which plaintiff and his grantor had pro-
cured water from the defendant for 19 years or
more, the quantity of water to be furnished had
been designated as ''sufficient for the production of
good, average crops, under skilful irrigation'', not,
however, to exceed one cubic foot per second for
each 53 acres.   And the maximum rate therefor,
prior to 1904, had been fixed by the county commis-
sioners at $1.75 per acre, and accepted by the de-
fendant.   Therefore, the amount prescribed by the
county commissioners may be regarded as based on
this usage, recognized by the parties, and the de-
mand made was for substantially the same quantity
per acre as had been furnished theretofore under
such contract and usage.

(4)   It is urged by defendant that plaintiff
could not abandon the contract under which he and
his grantor had been receiving water for so long a
period, and require the defendant to continue to fur-
nish water irrespective of that contract.   The con-
tract was not pleaded as a defense, but it was ad-
mitted in evidence upon and as a part of plaintiff's
cross-examination, and its force and effect discussed
both by appellant and appellee.   There is nothing in
its terms which specifically requires the grantee
therein of the ''right to receive and use water from
the canal of the said party of the first part'', to con-
tinue to exercise such right for any definite period
of years, or which forbids an abandonment of the
contractual rights by the grantee at any time there-
after.   And the provision in said contract that upon
a forfeiture, by the grantee, of his rights and inter-
ests through failure to pay the annual rentals, said
grantee shall surrender all rights or interests there-

by created, does not necessarily include a surrender of the statutory right to continue to purchase water for the same land and in the same amount as theretofore used. It amounts to no more than a surrender of the rights under the contract. ''In the absence of an express declaration to the effect that such omission or failure should produce a forfeiture of constitutional and statutory rights existing, collateral to those provided for in the agreement, such collateral rights would, in any event, unquestionably remain undisturbed.'' *South Boulder etc. Ditch Co. v. Marfell et al., supra.* There is nothing in the deed by which plaintiff's grantor conveyed to him her water-rights in this canal which obligated him to keep and perform any of the conditions of the contract under which she had theretofore received water. The plaintiff having expressly abandoned all right and claim under the contract, and having so notified the defendant before and upon demand for water, and tender, we think his right to require defendant to furnish water was not affected by the terms of the contract.

It is earnestly contended that the admission in evidence of the pleadings, orders and other proceedings in the mandamus suits, was error, because there was no proper plea of *res judicata* to support the admission of this evidence for that purpose. The proceedings for, and the issuance of the writs were admitted by the pleadings. The files and orders were offered and received for the purpose of showing that the parties thereto were the same as in the present case, and that one of the issues in that proceeding was the same as raised in the instant case, to wit, the right of plaintiff to demand and receive

water from the defendant, and was decisive thereof so far as that point was concerned. We think the complaint was sufficient to admit the evidence for that purpose. 23 Cyc. 1525; *Grand Valley Irr. Co. v. Fruita Imp. Co.*, 37 Colo. 483; *Smith et al. v. Cowell et al.*, 41 Colo. 178.

Other objections raised by the assignments of errors do not require special consideration. The judgment is affirmed.

Decided July 8, A. D. 1912. Rehearing denied October 14, A. D. 1912.