[No. 8351.]

## FORT LYON CANAL COMPANY V. BENNETT ET AL.

1. PLEADINGS—*Certainty.* One who demands damages for injuries oc-
casioned to growing crops must set forth his interest, right, or right of
possession, in the land, in terms so specific that a judgment in his favor
will bar subsequent action for the same injury by any third person.

The mere allegation that plaintiff was "engaged in farming the land"
held insufficient.  (116.)

2. TORTS—*Right of Action.*  One who acquires an interest in land, years.
after the construction of permanent works for the conveyance of water,
and the continuous use thereof, in the meantime, is not entitled to an action
for an injury to the crops growing upon such land, attributed to negligence
in the construction of such work.  (117.)

3. EVIDENCE—*Competency.*  Action for injury to growing crops, by the
diversion therefrom of water necessary for the irrigation thereof, attributed
to misconduct of defendant.  Plaintiff, to show that there was flowing the
canal by which the lands were supplied, during the season in question, water
sufficient to supply his needs, was permitted to introduce the records of a
voluntary association of planters, compiled from information communicated
from day to day by telephone or telegram, by different persons, from differ-
ent localities upon the stream.  *Held* mere hearsay and its admission error.
The water commissioner, the head gate keeper upon the river who kept a
daily record of the in-take' of the canal, the ditch superintendent, and his
riders who distributed the water, and the farmers under the canal were all
competent to testify, to the extent of their knowledge, as to the volume in
the canal, at any time, and the testimony of each and all of them was better
evidence than the record in question.  (118.)

The plaintiff in such an action should be required to show that the
canal upon which he relied for the irrigation of his crops, carried a suffi-
cient volume of water, at the proper time.  (119.)

Testimony as to the total volume carried by the canal during the whole
season of irrigation is incompetent.  (119.)

Allegation that defendant negligently constructed a siphon, so that sand and debris collected therein, obstructing the flow of water to plaintiff. Evidence that crops raised under a siphon were inferior to those raised under an open ditch, *held* incompetent, as diverting the minds of the jury from the issue presented by the pleadings. (120.)

4. —— *Admissions of Agent*, are not to be received against the principal, without evidence of the agent's authority in the premises. (121.)

5. —— *Impeachment of Witness*, by evidence of contradictory statements is not allowed until the proper foundation is laid. (121.)

6. ——*Judicial Notice Taken*, that wheat is not irrigated in August. (124.)

7. TRIAL—*Questions for the Jury.* Defendant offering to show that by a small outlay plaintiff might have prevented the injury of which he complained, *held* that the practicability or impracticability of the remedy proposed was for the jury. (120.)

8. INSTRUCTIONS—*Duty of the Court.* The trial court should, in the charge to the jury, define and set forth only the issues, as they then appear. To set forth, in detail, all the allegations of the pleadings, is, in general, unnecessary and improper. (121.)

9. TRESPASSER AB INITIO—*Nuisance.* Defendant company acquired by purchase the right to carry its canal across the ditch of another, and for the purpose constructed a siphon, under the direction and supervision of the engineers of both companies, and of a size requested by plaintiffs. *Held* that defendant was not a trespasser, nor its structure a continuous nuisance. (123.)

10. APPEAL AND ERROR—*Abstract.* Where it is proposed to sustain a question as tending to impeach a witness, the abstract must show that the proper foundation was laid. (121.)

11. —— *Party Bound by Position Below.* The court of review will not consider a view of the controversy not presented in the court below. (124.)

12. NEW TRIAL—*Excessive Verdict.* Action for an injury to growing crops. The evidence showed that the year was a very dry year, that for weeks the canal from which plaintiff was supplied carried but little water. *Held* that the allowance to plaintiff of the value of a full crop was excessive. (124.)

*Error to Otero District Court.* Hon. C. S. ESSEX, Judge.

Mr. HENRY A. DUBBS, Mr. O. G. HESS and Mr. HENRY C. VIDAL, for plaintiff in error.

Mr. FRED A. SABIN, for defendants in error.

GARRIGUES, J., delivered the opinion of the court.

1.   May 28, 1911, Bennett and son, as copartners, spoken of as plaintiffs, filed a complaint in the District Court of Otero County alleging in substance that the Fort Lyon Canal Company, defendant, below, plaintiff in error, owned and operated a canal called the Fort Lyon Storage canal or supply ditch, constructed to divert and carry water from the Arkansas river, for storage in a reservoir; that plaintiffs were engaged in the business of farming a certain tract of arid land constituting part of the Holbrook Irrigation District, and irrigated from the Holbrook canal, an irrigating ditch belonging to the district, which would have supplied plaintiffs with sufficient water to irrigate the land in 1910 had the lateral not been interfered with by defendant; that they possessed, and had the right to use, a lateral of sufficient size and capacity, and in proper condition, to carry the water from the Holbrook canal to and upon the land, except as it was interfered with by defendant; that in 1910, in carrying on their business of farming the land, they in proper time and workmanlike manner, plowed and seeded 20 acres to cucumbers, 24 acres to sugar beets, and 26 acres to wheat; that there was already growing thereon 107 acres of alfalfa, and a bearing apple orchard, all requiring irrigation from the canal through this lateral; that sometime prior to January, 1910, defendant constructed the supply canal across the line of the lateral; that it became necessary for defendant to provide a means of carrying the lateral, and water used by plaintiffs in farming the land, across the supply canal, and for this purpose it designed, adopted and laid a line of vitrified sewer pipe in the form of an inverted siphon under the supply canal; that the siphon was negligently constructed, in that it was not of sufficient size to carry the water, was left rough on the inner surface, and hence not suitable for the purpose for which it was built; that all of this was done by defendant without any license, right, authority, or consent of plaintiffs, or of the owner of the

lateral; that during the year 1910 there was sufficient available water flowing in the Holbrook canal, which plaintiffs were entitled to have delivered to them through the lateral, to have produced full crops which they would have grown to maturity on the land, except for the interference with the lateral by defendant, which rendered it impossible for plaintiffs to obtain from the ditch the volume of water necessary for the proper irrigation of the crops; that except for such interference with the lateral, the land in 1910 would have produced 400 pounds of cucumber seed to the acre, 18 tons of beets to the acre, 45 bushels of wheat to the acre, 3½ tons of alfalfa hay to the acre, and the orchard would have produced 150 boxes of apples; that on account of such interference, it only produced 85 pounds of cucumber seed to the acre, 8 tons of beets to the acre, 17 bushels of wheat to the acre, 2½ tons of alfalfa hay to the acre, and the orchard only produced 20 boxes of apples; that plaintiffs were damaged on account of the partial failure of the cucumber crop in the sum of $1,008.00, of the beet crop in the sum of $128.00, of the wheat crop in the sum of $496.72, of the alfalfa crop in the sum of $508.00, of the apple crop in the sum of $150.00, and in attempting to run water through the siphon, they were obliged to and did expend the sum of $155.00 in removing sand and debris therefrom, and in cleaning the lateral of lodgments caused thereby.

Defendant filed a motion requesting that plaintiffs state more specifically the manner in which the loss of the crops was an injury to or damaged them; that is, the connection or relation of defendant with the damage, which was overruled.

A general demurrer to the complaint was overruled, and defendant answered, admitting the corporate existence and the construction of the canal and siphon, and denying every other allegation of the complaint.

By special defense it charged plaintiffs with contrib--

utory negligence for failing to properly place and maintain the lateral, and to put and keep it in proper condition to carry the water.

It also set up as a special defense that the construction of the canal and the siphon by defendant, and the work in connection therewith, were performed and completed in 1907, long prior to the existence of any title, possession or right of possession in plaintiffs, in or to the land; that the siphon was in part an underground structure, and it and the works in connection therewith were, and were designed to be, of a permanent character; that at all times after their construction, and up to and through the year 1910, and for a long time prior to the existence of any title, possession or right of possession in plaintiffs in or to the land, the structures remained as they were originally completed; that during the year 1910 they were capable of carrying as much water to and for the land as at any time after their completion; that at the time of the completion of all the work thereon by defendant, for a long time thereafter, and up to and for a long time after the water for the irrigation of the land was first run through the siphon, the lands were owned by and in possession of persons other than plaintiffs, and the structures were at all times after their completion, and up to the year 1910, used in conveying water for irrigating the lands, and they were so irrigated; that all such rights as were possessed by plaintiffs to farm the land for the year 1910 were acquired by them after the construction of, and with full knowledge of the existence of the siphon, and the work of installing it, and after the water for the lands was run through the siphon and used for their irrigation; that plaintiffs have never owned the lands or any part thereof, and have never owned any water rights for the lands. The court ruled out this defense on general demurrer. Plaintiffs replied that if the siphon had been constructed by defendant of proper size, grade and materials, no sand or

debris could have lodged in or obstructed the flow through it, which replication was stricken by the court as a departure from the cause laid in the complaint. The jury returned a verdict for $2,750.00, upon which judgment was entered.

2. The court should have sustained defendants's motion to make the complaint more specific. We do not reverse the case on this account, however, but inasmuch as it must be reversed and remanded for other reasons plaintiffs will be given an opportunity to file an amended complaint if they desire. In a suit for damages to growing crops done before maturity, plaintiff's title, right, interest, ownership, or right of possession in the land, should be stated, for the purpose of showing his connection with the crop and the damages. The only allegation of fact touching the ownership of the land here, is that plaintiffs were engaged in the business of farming the land, which they planted in certain crops. The allegations in this regard should be such as would, if true, when set out in an answer, constitute a bar against another suit brought by a purported owner or lessee of the land against the defendant for the same loss, if pleaded for that purpose. There is danger that the mere allegation that plaintiffs were engaged in the business of farming the land would not, when pleaded in a subsequent action, constitute such a bar.

3. The court erred in sustaining plaintiffs' demurrer to defendant's additional special defense. The demurrer admitted all the facts therein well pleaded, which brings into consideration the legal sufficiency of the pleading. It alleged in this defense and offered to prove that the siphon was constructed long prior to the existence in plaintiffs of any title, possession, right or interest in or to the land or water; that the siphon was permanent in character, and was maintained and operated as originally constructed, for several years prior to the existence in plaintiffs of any title, possession or right of possession in the water, lateral or

land; that its capacity was the same at all times; that long prior to 1910 the lands were owned by, and in possession of persons other than plaintiffs; that the siphon after its completion and up to 1910 was used in conveying water to the lands; that whatever right plaintiffs may have had to farm the lands in 1910, was acquired by them long after the construction, and with the knowledge of the existence, of the siphon, and the work of installing the same; and that plaintiffs never owned the lands or any part thereof nor any water rights for the same. From this defense it appears that the siphon was constructed in 1907, and was thereafter used as a permanent structure in connection with the land. Whatever right plaintiffs may have acquired in the land, if any, was admitted by the pleading, to have been acquired long after the structure was built, and had been in use, in connection with the land. Under such conditions, repeated actions year after year, by subsequent purchasers, lessees or croppers for the loss of the crops, cannot be maintained. Such subsequent owners or lessees would take the land subject to the permanent conditions of the laterals as they existed when their rights were acquired. *City of Denver v. Bayer*, 7 Colo. 113, 2 Pac. 6; *Denver C. I. & W. Co. v. Middaugh*, 12 Colo. 434, 21 Pac. 565, 13 Am. St. Rep. 234; *Jackson v. Ackroyd*, 15 Colo. 583, 26 Pac. 132; *City of Pueblo v. Shutt Inv. Co.*, 28 Colo. 524, 67 Pac. 162, 89 Am. St. Rep. 221; *D. & S. F. Co. v. Hannegan*, 43 Colo. 122, 95 Pac. 343, 16 L. R. A. (N. S.) 874, 127 Am. St. Rep. 100; *C. M. Ry. Co. v. Trevarthen*, 1 Colo. App. 152, 27 Pac. 1012; *Roberts v. Northern Ry. Co.*, 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873; *Sposato v. City of New York*, 75 App. Div. 304, 78 N. Y. Supp. 168; *Kernochan v. N. Y. E. R. R. Co.*, 128 N. Y. 559, 29 N. E. 65; *Dumois v. Hill*, 2 App. Div. 525, 37 N. Y. Supp. 1093; *City of Richmond v. Gentry*, 136 Ky. 319, 124 S. W. 337, 136 Am. St. Rep. 255; *Pence v. City of Danville*, 147 Ky. 683, 145 S. W. 385; *C. & A. R. R. Co. v. Maher*, 91

Ill. 312; *T., W. & W. Ry. Co. v. Morgan,* 72 Ill. 155; *Moore v. Lancaster,* 212 Pa. 642, 62 Atl. 100, 2 L. R. A. (N. S.) 819; *Mead v. Hein,* 28 Wis. 533; *Irvine v. Oelwein,* (Iowa) 150 N. W. 674.

4. The complaint was predicated upon the theory, and plaintiffs contended on the trial, that the water supply in the canal was ample at the proper time to irrigate the crops, and that they would have received sufficient for that purpose except for defendants's negligence. One essential item of proof upon which plaintiffs relied, was that the volume flowing in the canal was sufficient. It seems some 19,000 acres under the canal were in crops depending upon this ditch water for irrigation, which was divided *pro rata* to the consumers, and plaintiffs were entitled to their share. Whether there was a sufficient volume of water in the canal at the time plaintiffs needed it was a vital issue in the case upon which they had the burden of proof. To meet this issue, instead of showing the volume in cubic feet per second flowing into the canal, each day when their crops required irrigation, they attempted to show the total number of acre feet diverted into the canal during the whole irrigating season. This was done by introducing in evidence records compiled and kept in the office of a witness employed by the Associated Ditches on the Arkansas, a voluntary association. Plaintiffs were allowed to read in evidence these records, for the purpose of showing that the canal carried sufficient water to irrigate the crops under it. These records were compiled by the witness and his stenographers from information telephoned or telegraphed into the office, by different people, and from various sources, up and down the river. While the witness made some of the entries, none of the information to which he testified, and contained in the record, was matter within his own personal knowledge, or from records made from his own personal knowledge. The record was all hearsay, and inadmissible. If

this were held to be competent evidence, what an absent
person said would be a common and simple method of prov-
ing one's case.  The court stated it admitted this evidence be-
cause it seemed to be the best of which the case in its nature
was susceptible.  Even if this were true, it did not make
the evidence competent.  The first requisite of evidence,
before it is admissible under any rule, is that it must be
competent.  The purpose of the rule mentioned by the court,
is to prevent the promiscuous introduction of testimony by
requiring the best evidence, not to make incompetent evi-
dence competent.  But it was not the best evidence.  The
water commissioner, the river headgate keeper who kept
a record of the volume of the intake of the canal each day,
farmers under the canal who used the water, the ditch
superintendent and his riders who distributed the water,
were all competent to testify directly to what they knew
concerning the time and volume of the running water in
the canal.  There is another objection.  The witness was
permitted to testify from these records that during the
whole irrigating season, 23,000 acre feet of water flowed
into the canal.  This was admitted for the purpose of show-
ing that the available water supply was sufficient, at the
time plaintiffs' crops needed irrigation.  Irrigation is said
to be a science.  Crops require irrigation at certain stages
of development; to irrigate them at any other time is a posi-
tive injury, and worse than no irrigation.  Plaintiff should
have established that the canal carried a sufficient volume
of water at the proper time.  Take, for instance, wheat
irrigation; if the water is applied too early it stunts the
plant, if too late it will not revive the crop.  While the aver-
age number of acre feet carried by a canal may be compe-
tent testimony if properly presented, still it came far short
of showing the volume of water flowing in the canal at the
time when particular crops required irrigation.  *Loloff v.
Sterling*, 31 Colo. 102, 71 Pac. 1113; *Big Thompson Co. v.*

*Mayne,* 36 Colo. 355, 91 Pac. 44; *Keel v. Schaupp,* 42 Colo. 70, 93 Pac. 1094; *Stratton Co. v. Ellison,* 42 Colo. 499, 94 Pac. 303; *Rio Grande Southern Ry. Co. v. Campbell,* 44 Colo. 1, 96 Pac. 986; *Washington Co. v. O'Laughlin,* 46 Colo. 503, 105 Pac. 1092; *Denver C. T. Co. v. Cowan,* 51 Colo. 64, 116 Pac. 136; *Crawford v. Birkins,* 16 Colo. App. 532, 66 Pac. 687.

5. The complaint alleged that defendant negligently constructed the siphon in such a manner that it filled up with sand and debris, thereby obstructing the flow of water from the canal into the lateral, and the proof should have been confined to this issue. The court permitted evidence to be introduced by the plaintiffs which was intended to show that crops raised under open laterals were better generally that year under the canal than those raised under siphons. The purpose of this comparison was to show that crops generally under siphons were not as good as under open laterals that year. The tendency of this evidence was to divert the minds of the jury from the main issue to which they should have been confined. *Diamond Rubber Co. v. Harryman,* 41 Colo. 415, 92 Pac. 922; *R. G. S. Co. v. Campbell,* 44 Colo. 1, 96 Pac. 986; *Denver C. T. Co. v. Cowan,* 51 Colo. 64, 116 Pac. 136; *Griffith v. Denver,* 55 Colo. 37, 132 Pac. 57.

6. Defendant tendered evidence showing that by a small outlay plaintiffs could have constructed a screen or break water at the siphon headgate of the lateral in the canal, which would have prevented debris, trash and rubbish from entering the siphon. The court excluded this evidence upon the ground, as it said, that it considered such a device impracticable. This was invading the province of the jury. *Mack v. Jackson,* 9 Colo. 536, 13 Pac. 542; *Northern Co. v. Pouppirt,* 22 Colo. App. 564, 127 Pac. 125; *Roberts v. Lehl,* 27 Colo. App. 351, 149 Pac. 851.

7. Plaintiffs were allowed on rebuttal to place a wit-

ness on the stand who testified that defendant's engineer, Powell told him he knew the siphon was damaging plaintiffs' crops and that defendant would have to pay for the damages.   If this was intended for substantive testimony showing an admission of liability on the part of the company there is no evidence that Powell had any authority to bind the company, or was qualified to make such a statement. *Edmonds v. Curtis,* 8 Colo. 605, 9 Pac. 793; *Emerson v. Burnett,* 11 Colo. App. 86, 52 Pac. 752.

If the admission of the evidence was limited to the express purpose of impeaching the witness Powell, the abstract fails to disclose that the proper foundation was laid.

8.   The court in its instructions, defining the issues, afforded an opportunity for prejudicing the defendant's case before the jury.   It is the duty of the court in a jury trial to define and settle the ultimate issues remaining in the case as they appear at the time it is given to the jury.   Submitting to the jury in detail all the allegations disclosed in the pleadings, whether or not they are finally for its determination, is unnecessary and improper, and might in some cases be prejudicial.   Without some good reason it is safer for the court not to inform the jury of matters contained in the pleadings which constitute no issue for their consideration and determination as the case is finally submitted.   *Cook v. Merritt,* 15 Colo. 212, 25 Pac. 176.

9.   The Holbrook and Fort Lyon Canals run parallel at this place with a highway between them.   The grade of the Lyon was 2 feet below the grade of the Holbrook.   Before constructing the Lyon a 15 inch pipe line, with its headgate in the bank of the Holbrook, carried the water across the highway to the lateral.   Upon construction of the Lyon, defendant constructed, under the supervision of the engineers of both canals, a 21 inch siphon to take the place of the 15 inch pipe line, and one of the plaintiffs testified that they

requested defendant to put in the 21 inch siphon. The evidence shows that the headgate of the siphon was put in the bank of the Holbrook at the same place, and upon the same grade, as the original pipe line, and that the discharge of the siphon was at the same place and upon the same grade as the discharge of the pipe line; that the siphon was 150 feet long, and had a fall of .6 of a foot in that distance; that is, the grade of the discharge was .6 lower than the grade of the intake of the siphon; that an ordinary and usual 80 acre water right used for irrigation on the Arkansas is 1.44 cubic feet per second, and that plaintiffs had 300 acres in crops; that the siphon under a foot head would discharge 12 cubic feet per second, and under a 5 foot head 28.68 cubic feet, which was more than twice the capacity of the 15 inch pipe line removed; that the grade of the lateral was one half of .1 of a foot to the 100 feet, or 2.64 feet to the mile; that on account of the sediment running in the Holbrook, it should have had a grade of .1 of a foot to the 100 feet or 5.28 feet to the mile; that the obstruction in the siphon was caused by its insufficient grade and lack of capacity in the lateral; that if the lateral had had sufficient grade and capacity to give the siphon a proper discharge, it would have cleaned itself of all sediment, trash and rubbish; that because it was in the form of a siphon instead of a straight pipe line made no difference about its cleaning; that if the capacity and grade of the lateral were insufficient it would check the flow, which would cause a deposit of sediment, and choke up the siphon; that the slow grade of the lateral caused the heavy sediment in the water of the Arkansas to deposit in the bottom of the lateral which tended to fill it up, reduce its capacity and thus retarded the discharge of the siphon, and caused it to choke; the grade and capacity of the lateral were the primary causes of the trouble; that relatively Holbrook is a junior canal on the stream, and it being a very dry season the senior canals

diverted all the ordinary flow; that the supply it obtained came mostly in spurts from storms, causing the river to carry heavy sediment and trash; that about the last of July there was a heavy storm on the Huerfano which washed out several farms, and caused the river to carry a thick mud, filled with trash and rubbish which entered the siphon; that if the lateral had sufficient grade and capacity the siphon would have cleared itself of debris; that the Holbrook canal was without water 24 days in April, 13 days in May, 20 days in June, 14 days in July and 5 days in August prior to the 19th, after which no water was turned into it at all during the remainder of that season, and from June 9 to July 30 it diverted but little water, which was wholly insufficient for the irrigation of crops. It is apparent from this statement that this is a case in which defendant was entitled, for its own protection, to insist on the enforcement of strict and proper rules of pleading; that on the trial only competent evidence should be admitted and that the case be submitted to the jury upon proper instructions defining the ultimate issue for their determination.

10.    Plaintiffs contend defendant was a trespasser *ab initio,* and that the maintenance of the siphon was a continuing nuisance which made the defendant liable for the successive loss of crops, from year to year. Such a contention is not maintainable either under the pleadings or evidence. Defendant was engaged in a laudable occupation authorized by the laws and statutes of the state, and plaintiffs allege in their complaint that it was necessary for defendant to provide some means to carry the Holbrook water across the Lyon canal. It duly acquired the right of way by purchase where it crossed the lateral, and had it not, it could have acquired it through the right of eminent domain. The siphon was put in under the joint supervision and direction of the engineers of both canals, and one of the plaintiffs testified that they requested a 21 inch siphon.

Under such conditions and circumstances, the claim that the defendant was a trespasser *ab initio* and was maintaining a continuing nuisance, or any nuisance, cannot be maintained. *Tynon v. Despain,* 22 Colo. 240, 43 Pac. 1039. *Middelkamp v. Bessemer Irr. Co.,* 46 Colo. 102, 103 Pac. 280, 23 L. R. A. (N. S.) 795; *Arthur Irr. Co. v. Strayer,* 50 Colo. 371, 115 Pac. 724; *De Graffenried v. Savage,* 9 Colo. App. 131, 47 Pac. 902; *Jones v. Bondurant,* 21 Colo. App. 24, 120 Pac. 1047.

11.   Plaintiffs now argue in their brief that when defendant removed the pipe line and substituted a siphon therefor it changed the existing conditions or situation for carrying the water to the lateral, and on this account it became an insurer. The complaint is laid in negligence. This issue was attempted to be met and the case was tried upon that theory and we cannot now, in this court, consider a departure.

12.   The verdict does seem excessive. Plaintiffs were allowed to recover for full crops grown under the most favorable conditions. Simple justice requires that prospective crops should not be converted into a cause of action more remunerative than the crops themselves would have been. There was evidence that it was an unusually dry year; that the Holbrook was a junior canal and we have already mentioned the dates when it was entirely without water. The evidence shows that from June 9, to July 30, it diverted but little water and one of the plaintiffs testified that water was very scarce and insufficient that year. There was some flow in the canal in August while the canal was clogged; but we will take judicial notice that wheat is not irrigated in August, yet plaintiffs were allowed for a full crop of wheat. Under such circumstances to allow plaintiffs for full crops seems to be excessive.

Nothing in this opinion is intended to foreclose any question of fact at any subsequent trial. The case is re-

versed and remanded for trial *de novo* and on the trial the court will not consider that any question of fact has been judicially determined.

*Reversed and remanded.*

Chief Justice GABBERT and Mr. Justice SCOTT concur.