[No. 5380.]
[No. 3030 C. A.]

The Denver and Santa Fe Railway Company et al.
v. Hannegan et al.

1. Cities and Towns—Streets—Dedication—Effect on Fee.
    Under the dedication of land as a street, the fee vests in the city in trust for the use of the public.—P. 126.
2. Cities and Towns—Streets—Use for Railway Purposes—Municipal Power.
    City authorities can authorize the occupancy and use of a dedicated street for railway purposes, though it is a servitude not strictly within the ordinary use of a public street.—P. 126.

3. **Railroads—Use of Streets — Inconvenience to General Public —Avoidance of Claim.**

Where city authorities authorize the occupancy of a dedicated street for railway purposes, the city may not claim damages through the resulting inconvenience to the general public; and so long as the company or its successor limits such occupancy and use to legitimate railway purposes, and in accordance with the ordinance granting the use, no action can be maintained by any one upon the ground that such occupancy and use constitute a nuisance.—P. 126.

4. **Railroads—Eminent Domain—Rights of Abutting Lot Owners.**

Where city authorities authorize the use of a street for railway purposes, abutting property owners are only entitled to recover for injuries suffered by them as such, and not for annoyance or inconvenience common to the general public; and they are entitled to indemnity for permanent interference with ingress to, or egress from, their lots, and for loss in the value thereof otherwise, and the measure of their compensation is the actual diminution in market value of their premises for uses to which they might reasonably be put, occasioned by the construction and operation of the railroad through the street.—P. 126.

5. **Same—Time for Bringing Action.**

. The right of an abutting property owner to sue for damages, caused by the use of a street for railway purposes, may be lost by delay, or barred by the statute of limitations, the latter commencing to run from the first occupancy of the street for such purpose.—P. 127.

6. **Railroads—Sale—Vendor and Vendee—Liability of Vendee for Vendor's Debts.**

Where the sale of a railroad does not appear to have been made for an inadequate consideration, or to have been characterized by bad faith, the purchaser takes it without liability for the vendor's unsecured debts, or unasserted and undetermined obligations growing out of alleged trespasses, and hence is not liable for damages to abutting property owners caused by the construction of the road in a street, where it had no knowledge of, and no reason to suspect the existence of, such claim.—P. 128.

7. **Corporations — Sales — Equity Proceedings — Unpaid Obligations—Effect.**

In all cases where a corporation disposes of its entire assets and practically goes out of business, leaving unpaid obligations, the sale will, especially in equity, be scrutinized with unusual care, and a strict rule of accountability for any bad faith discovered will be applied against the purchasing company.—P. 129.

8. **Railroads—Eminent Domain—Streets—Increase of Traffic.**

An increase in traffic over railway tracks in a street is fairly within the original servitude.—P. 130.

9. **Railroads—Sales—Vendor and Vendee—Liabilities of Vendee.**

Owners of property abutting on a street used for railway purposes may not recover against the vendee of a railroad on account of such use, where it does not appear that, after the purchase, the street was subjected to any other or different servitude, or that the property owner suffered any added injury because of an unreasonable, improper, or wrongful use of the track.—P. 131.

*Appeal from the District Court of Arapahoe County. Hon. F. T. Johnson, Judge.*

Action by Mamie Hannegan and Frank Hannegan, minors, by their guardian, Hugh Hannegan, against The Denver & Santa Fe Railway Company and The Atchison, Topeka & Santa Fe Railroad Company. From a judgment for plaintiffs, defendants appeal.     *Reversed.*

Messrs. Rogers, Cuthbert & Ellis, for appellants.

Mr. W. W. Cover, for appellees.

In 1880 plaintiffs were the owners of two lots abutting on Clark street and Fifth avenue, in Sumner's Addition to the city of Denver. In 1881 the city council adopted an ordinance granting to The Denver Circle Railroad Company a right to occupy and use Clark street for the purpose of constructing its line and operating its trains through the same. The Circle Company at once built its line, and from 1882 to 1887 operated its trains through and along said street. In the latter year appellant, The Denver and Santa Fe Railway Company, bought all of the property, franchises, etc., belonging to the Circle Company. At or about the same time the Denver and Santa Fe Company executed a ninety-nine-year

lease of this property to appellant, The Atchison, Topeka & Santa Fe Railroad Company. The latter company at once took possession and operated the line of railway through said street until the present suit was begun, to wit, September 22d, 1888.

For some reason the cause was not brought on for trial until October 22d, 1903. A jury being waived, the trial was had to the court, who, upon hearing the testimony, entered judgment in favor of appellees, who were plaintiffs below, for the sum of $500.00. To reverse that judgment the present appeal was taken.

It was stipulated that the fee to the lots in question was in plaintiffs prior to the occupancy of Clark street by the Circle Company, and that it continued and remained in plaintiffs down to the date of trial. It also appeared in evidence that the line originally constructed by the Circle Company was narrow gauge; that subsequent to the purchase and leasing by defendants a change thereof to standard gauge by the laying of a third rail was considered; that the laying of such rail was never completed and standard-gauge trains were never operated through Clark street; and that some time after the commencement of the action the rails and ties laid by the Circle Company were removed; and the occupancy and use of Clark street were entirely abandoned.

The injuries suffered by appellees consisted of annoyance and inconvenience through the occupancy and use of the street for narrow-gauge railway purposes; no evidence was offered showing or tending to show broad-gauge uses.

Plaintiffs were, even at the date of the trial, minors, and no defense was pleaded or objection interposed based upon delay in commencing or prosecuting the action, or referring to statutes of limitation.

Mr. Justice Helm delivered the opinion of the court:

No proofs were offered tending to show that the fee to Clark street was in plaintiffs. The stipulation touching ownership of the lots mentioned did not reach or include title to the street. On the contrary, under the dedication the fee thereto was vested in the city in trust for the use of the public. A discussion of this subject is rendered unnecessary by the decision in *Denver, S. F. R. Co. v. Domke,* 11 Colo. 254, wherein the status in this regard of Clark street was considered and affirmatively declared.

It follows from the foregoing fact, coupled with the authority vested by the constitution and statutes in the city council, that that body had plenary control over the street. The city authorities could authorize the occupancy and use thereof for railway purposes, although it is a servitude not strictly within the ordinary uses of a public street. And the effect of the grant to The Denver Circle Railroad Company by the ordinance of January 28th, 1881, was to render legal such occupancy and use and avoid any claim by the city for damages through the resulting inconvenience to the general public. Moreover, so long as the grantee or its successors limited such occupancy and use to proper and legitimate railway purposes, conducting the same in accordance with the provisions of the ordinance, no action could be maintained by any one upon the ground that such occupancy and use constituted a nuisance.

The only relief to which plaintiffs were entitled was for injuries suffered by them as abutting lot owners; they could not recover for such annoyances or inconveniences as were common to the general public. They could claim indemnity for permanent interference with ingress or egress to and from their lots, and for loss in the value thereof otherwise. The

measure of their compensation was the actual diminution in market value of their premises for uses to which they might reasonably be put, occasioned by the construction and operation of the railroad through Clark street.

Upon this view of the law the complaint was evidently drawn and the trial was manifestly conducted; although both the printed and oral arguments before us contain suggestions based upon the theory of a continuing trespass or nuisance.

Under the authorities in cases of this kind the abutting lot owner sues for and recovers the total amount of his injury in a single action. This action is usually brought at or about the time of the occupancy of the street by the railway. And the right to maintain the same may be lost by delay and barred by statutes of limitation; which statutes begin to run from the first occupancy of the street for railway purposes.

The foregoing interpretation of the law and statement of principles touching the subject in hand have been heretofore fully adopted by this court: *City of Denver v. Bayer,* 7 Colo. 113; *Denver & S. F. R. Co. v. Domke,* 11 Colo. 247; *Railway Co. v. Foley,* 19 Colo. 280; *Denver Circle R. Co. v. Nestor,* 10 Colo. 403; *Colo. M. Ry. Co. v. Trevarthen,* 1 Colo. App. 152; *Frankle v. Jackson,* 30 Fed. 398.

Plaintiffs were entitled to recover from The Denver Circle Railroad Company compensation for the injuries, if any, suffered by them as such abutting lot owners, under the rules above stated. And although the evidence is somewhat doubtful and unsatisfactory, yet had the action been brought and recovery been had against that company, the judgment would not be disturbed.

This brings us to a question not hitherto squarely determined in Colorado, viz.: Did plaintiffs' right of

action in the premises against The Denver Circle Railroad Company extend to the present defendants? Or, stating the proposition in another way, Did the liability of The Denver Circle Railroad Company to plaintiffs pass by means of the sale and lease to defendants?

The complaint, after detailing the construction and operation of the line through Clark street by The Denver Circle Railroad Company, alleges that The Denver and Santa Fe Railway Company "purchased said railroad with all its rights, privileges and franchises, appurtenances and property, and became the owner thereof and took possession of the same."

The answer admits such purchase and possession. But neither in the pleadings nor in the evidence is there anything showing or tending to show a want of adequate consideration for the purchase or in any manner tending to establish bad faith in connection therewith. The two defendant corporations were, so far as we are advised by the record, wholly separate and distinct from The Denver Circle Railroad Company. Nor is there anything in the record bringing home to the purchasing or leasing company knowledge of plaintiffs' claim for damages against the Circle Company.

Some authorities hold that where one corporation transfers all its assets to another and practically ceases to exist, leaving debts unpaid, the latter corporation takes title subject to an equitable lien or charge in favor of the vendor's creditors. But upon careful examination it will be found that all or nearly all of the cases cited in support of this rule deal with transfers not in the ordinary course of business and where peculiar circumstances require its application in the interest of equity and justice. For instance: where the purchasing company ex-

pressly assumes the debts of the seller; where the purchasing company is organized by the officers, directors or stockholders of the vendor and is practically the same company under a different name; where the consideration for the sale is nominal or grossly inadequate; where two old companies, by reason of consolidation, become extinct and all their assets are taken over by a new company organized for the purpose; in short, where either the purchasing company assumes payment of the debts of the vendor, or the transaction is of such a nature as that the element of actual or constructive fraud fairly enters therein.

And in all cases where a corporation disposes of its entire assets, and practically goes out of business, leaving unpaid obligations, the sale will, especially in equity, be scrutinized with unusual care, and a strict rule of accountability for any bad faith discovered will be applied against the purchasing company.

But, on the other hand, where, as in the case at bar, nothing appears in the record either by pleadings or proofs tending to show that the sale was made upon inadequate consideration or that it was characterized by bad faith in any manner, the purchaser takes the property without liability for payment of the vendor's unsecured debts.

"Where a corporation transfers all its assets to another corporation which does not agree to assume the liabilities of the selling corporation, and both corporations maintain a separate existence, then, in the absence of fraud, the purchasing corporation will not be answerable for any debts of the selling corporation."—10 Cyc. 1268; *Goldmark v. Magnolia Metal Co.*, 44 N. Y. App. Div. 39; *Brundred et al. v. Rice*, 49 Ohio St. 650; *Montgomery Web Co. v. Dienelt*, 133 Pa. St. 596.

Such being the rule as to "debts" of the vendor, it is unnecessary to comment upon the purchaser's liability for unasserted and undetermined claims against the former growing out of an alleged trespass.

As already observed, no proofs are offered showing that The Denver and Santa Fe Railway Company, when it purchased the property in question, had notice or knowledge that plaintiffs claimed compensation from The Denver Circle Railroad Company for damages to their abutting lots. Nor, so far as the record discloses, did defendants have reason to suspect the existence of any such claim. In fact, the commencement of this action, more than a year subsequent to the purchase and more than six years after construction of the railway line in Clark street, appears to have been the first intimation of such claim given to either defendant.

The laying of a third rail and operation of the line upon a standard-gauge basis was at one time contemplated by defendants. But this project was given up, no third rail was laid in front of plaintiffs' lots and no attempt appears to have been made to operate standard-gauge trains through the street even by the use of narrow-gauge trucks; nor is it shown that defendants permitted cars to stand in front of plaintiffs' lots or otherwise improperly obstructed the street. So that the possession and control by defendants as successors to the Circle Company did not constitute in law a different or additional burden; the mere increase of traffic and operation of a larger number of narrow-gauge trains, if such increase and operation took place, were fairly within the original servitude.

It follows, therefore, that plaintiffs could assert no claim against defendants based upon any new burden different from or in addition to the burden

imposed by The Denver Circle Railroad Company in the first instance.

It is clear that upon the record before us, neither of the defendants could be held responsible for damages to plaintiffs growing out of the original construction of the line in Clark street and use of said street for railway purposes. And as it does not appear that after the purchase the street was subjected to any other or different servitude or that plaintiffs suffered any added injury by reason of an unreasonable, improper or wrongful use of the railway track, no new cause of action arose in their favor and against defendants.

The judgment must be reversed.   *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concur.