In re Robert N. HOERY,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 02SA241.

Supreme Court of Colorado,
En Banc.

Feb. 24, 2003.

The Hannon Law Firm, LLC, Tearle W.T. Harlan, Kevin S. Hannon, Denver, Colorado, Attorneys for Plaintiff–Appellant.

Henry T. Miller, Trial Attorney, United States Department of Justice Torts Branch, Civil Division, Washington, DC, Attorneys for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this case, we agreed to answer two certified questions from the United States Court of Appeals for the Tenth Circuit regarding continuing trespass and nuisance under Colorado law. Pursuant to C.A.R. 21.1, the Tenth Circuit certified the following state law questions pertinent to an appeal pending in that court:

(1) Does the continued migration of toxic chemicals from defendant's property to plaintiff's property, allegedly caused by chemical releases by the defendant, constitute continuing trespass and/or nuisance under Colorado law?

(2) Does the ongoing presence of those toxic chemicals on plaintiff's property constitute continuing trespass and/or nuisance under Colorado law?

We answer both questions in the affirmative.

The plaintiff, Robert Hoery, brought suit under the Federal Tort Claims Act against the defendant, the United States, asserting claims for, among other things, continuing trespass and nuisance. Hoery claimed that the United States negligently released toxic

chemicals from Lowry Air Force Base into the ground which contaminated his nearby residential property. The United States District Court dismissed the case, concluding that Hoery failed to state a claim for continuing trespass or nuisance under either federal or Colorado law. On appeal, the Tenth Circuit determined that there was no controlling Colorado precedent to determine whether Hoery stated a claim for continuing trespass and nuisance under Colorado law and thus certified the questions to this court for our resolution.

Upon considering our precedent and other jurisdictions that have considered these questions, we hold that the alleged migration and ongoing presence of toxic chemicals on Hoery's property each constitutes a continuing trespass and nuisance under Colorado law. The alleged tortious conduct of the United States includes its failure to abate and to remove the toxic chemicals it placed beneath Hoery's property. In addition, we hold that this tortious conduct is not limited to the initial release of those chemicals from Lowry.

Thus, we answer both certified questions in the affirmative and return this case back to the Tenth Circuit for further proceedings.

## II. FACTS AND PROCEEDINGS

We rely on the Tenth Circuit's rendition of a substantial portion of the underlying facts of this case, which we accept as true for our purposes here.

Robert Hoery and his wife bought a residence in the East Montclair neighborhood of Denver, Colorado in 1993. The property has a groundwater well in the backyard to irrigate the lawn and vegetable garden.[1] Hoery's well is located seven blocks north of Lowry Air Force Base.

The United States operated Lowry as an active military base between the 1940s and September 1994. During that time period, the United States disposed of trichloroethylene ("TCE") and other toxic chemicals at Lowry. These releases created plumes of toxic pollution underneath property extending several miles north of Lowry, including the area underneath Hoery's property in the Montclair neighborhood. In 1997, the United States tested Hoery's irrigation well and found it was contaminated with TCE.[2]

Although the United States stopped all operations at Lowry related to the use of TCE in 1994,[3] the toxic plume continues to migrate underneath the Montclair neighborhood. TCE remains on Hoery's property and enters his groundwater and soil on a daily basis, unabated by the United States.[4]

Hoery brought suit under the Federal Tort Claims Act ("FTCA") in 1998 against the United States asserting claims for, among other things, continuing trespass and nuisance and sought unspecified damages. See 28 U.S.C. §§ 2671–80. Hoery alleged that the United States negligently released the TCE and caused contamination of his property, including groundwater, soil, and a well.

 The District Court granted the United States's motion to dismiss all of Hoery's claims for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The District Court held that Hoery presented permanent tort claims that were time-barred. Federal law governs when a cause of action under the FTCA accrues. Newcomb v. Ingle, 827 F.2d 675, 678 (10th Cir.1987)("federal law controls questions relating to accrual of federal causes of action."). For permanent torts, the claim accrues the later of when the injury first occurs or when

---

1. The well is approximately 48 feet deep and pumps underground water in the alluvial material above the Denver Aquifer.

2. TCE was detected in groundwater samples in Hoery's well at 20 micrograms per liter. The State of Colorado maximum contaminant level for TCE in drinking water is 5 micrograms per liter. See Memorandum from Versar Inc. to Lowry Air Force Base (Aug. 19, 1997).

3. Even though the United States retained an ownership interest in the property, we assume for our purposes here that the release of TCE from Lowry ceased in September 1994.

4. Hoery's expert, a hydrogeologist, testified in his affidavit that based upon the information available in November 1999, the contamination was not permanent and there were remediation strategies that could restore Hoery's property. The United States did not address this factual issue.

the plaintiff learned or should have learned of his injury and its cause. *See, e.g., Kronisch v. United States,* 150 F.3d 112, 121 (2d Cir.1998); *Arvayo v. United States,* 766 F.2d 1416, 1419 (10th Cir.1985). For continuing torts, however, federal law provides that the claim continues to accrue as long as the tortious conduct continues. In this event, plaintiff's recovery is limited to the statute of limitations period dating back from when plaintiff's complaint was filed. *United States v. Hess,* 194 F.3d 1164, 1177 & n. 12 (10th Cir.1999).

Because a two-year statute of limitations applies to FTCA claims, *see* 28 U.S.C. § 2401(b), the District Court held that Hoery's 1998 claims were untimely because Hoery knew or should have known his property might be contaminated by TCE from Lowry as of 1995. Hoery did not appeal that ruling.

In addition to the ruling construing federal statutes, the District Court further held that its ruling was consistent with Colorado law. Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because the acts alleged here occurred in Colorado, our precedent controls as to whether the allegations constitute a continuing trespass and nuisance.

The Court reasoned that the only "wrongful act" alleged by Hoery was the actual release of toxic chemicals by the United States, and that no continuing tort had been alleged because this act had ended in September 1994 when the United States stopped operating Lowry. Citing two of Colorado's "irrigation ditch cases," *see Middelkamp v. Bessemer Irrigating Ditch Co.,* 46 Colo. 102, 103 P. 280 (1909) and *Hickman v. North Sterling Irrigation Dist.,* 748 P.2d 1349 (Colo.App.1987), the District Court concluded that the nuisance and trespass was limited to the actual release of TCE by the United States and not the continued migration or ongoing presence of pollution on Hoery's property. Hoery appealed this ruling.

On appeal, Hoery argued that the migration and presence of toxic chemicals on his property were in themselves wrongful acts for which the United States was responsible and constituted continuing torts under our decision in *Wright v. Ulrich,* 40 Colo. 437, 91 P. 43 (1907). In the alternative, the United States asserted that Mr. Hoery's claims were permanent torts under our irrigation ditch cases and time-barred under the FTCA's statute of limitations. The Tenth Circuit, after reviewing these Colorado cases, determined that none of them indicated how we would rule on whether Hoery alleged continuing trespass and nuisance claims, and suspended the proceedings pending our response to the certified questions presented here.

## III. ANALYSIS

As background to our discussion of the certified questions, we briefly describe the underlying torts of trespass and nuisance and the distinctions between "continuing" and "permanent" torts under Colorado law.

### A. Trespass and Nuisance

The elements for the tort of trespass are a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that property. *Public Serv. Co. of Colorado v. Van Wyk,* 27 P.3d 377, 389 (Colo.2001); *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 933 (Colo.1997). The intrusion can occur when an actor intentionally enters land possessed by someone else, or when an actor causes something else to enter the land. For instance, an "actor, without himself entering the land, may invade another's interest in its exclusive possession by ... placing a thing either on or beneath the surface of the land." Restatement (Second) of Torts §§ 158(a) cmt. i, 159(1) (1965). A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property. *Miller v. Carnation Co.,* 33 Colo.App. 62, 68, 516 P.2d 661, 664 (1973)(citing *Fairview Farms, Inc. v. Reynolds Metals Co.,* 176 F.Supp. 178 (D.Or.

1959)); *see also* Restatement (Second) of Torts § 158(a) cmt. i ("It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.").

Another type of property invasion is a nuisance.[5] A claim for nuisance is predicated upon a substantial invasion of an individual's interest in the use and enjoyment of his property. *Public Serv. Co. of Colorado,* 27 P.3d at 391. Liability for nuisance may rest upon any one of three types of conduct: an intentional invasion of a person's interest; a negligent invasion of a person's interest; or, conduct so dangerous to life or property and so abnormal or out-of-place in its surroundings as to fall within the principles of strict liability. *Id.; Lowder v. Tina Marie Homes Inc.,* 43 Colo.App. 225, 227, 601 P.2d 657, 658 (1979). Like a trespass, conduct constituting a nuisance can include indirect or physical conditions created by defendant that cause harm. Restatement (Second) of Torts § 834 cmt. b.

## B. Continuing and Permanent Torts

Having delineated the elements of the underlying torts of trespass and nuisance, we must determine what makes them "continuing" or "permanent." The typical trespass or nuisance is complete when it is committed; the cause of action accrues, and the statute of limitations beings to run at that time. But in cases, for example, when the defendant erects a structure or places something on or underneath the plaintiff's land, the defendant's invasion continues if he fails to stop the invasion and to remove the harmful condition. In such a case, there is a continuing tort so long as the offending object remains and continues to cause the plaintiff harm. *See* W. Page Keeton et al.,

*Prosser and Keeton on The Law of Torts* § 13 (5th ed.1984).

In the context of trespass, an actor's failure to remove a thing tortiously placed on another's land is considered a "continuing trespass" for the entire time during which the thing is wrongfully on the land. Restatement (Second) of Torts § 161 cmt. b. Until the thing tortiously placed on the land, or underneath the land, is removed, then liability for trespass remains. *See* 75 Amer. Jur.2d Trespass § 26 (2002).

The same is true for nuisance. If the defendant causes the creation of a physical condition that is of itself harmful, even after the activity that created it has ceased, a person who carried on the activity that created the condition is subject to continuing liability for the physical condition. Restatement (Second) of Torts § 834 cmt. e.

For continuing intrusions—either by way of trespass or nuisance—each repetition or continuance amounts to another wrong, giving rise to a new cause of action. *See* Fowler V. Harper et al., *The Law of Torts* § 1.7 (3d ed.1996). The practical significance of the continuing tort concept is that for statute of limitation purposes, the claim does not begin to accrue until the tortious conduct has ceased. *Id.*

We recognized claims for continuing torts in *Wright,* 40 Colo. 437, 91 P. 43. In *Wright,* the plaintiff's house was adjacent to the defendant's slaughterhouse. We held that the harmful noises and stenches emanating from the slaughterhouse to the plaintiff's property constituted a continuing nuisance. We reasoned that the defendant was liable until the "nuisance was abated and the cause of damage removed." 40 Colo. at 440, 91 P. at 44 (citing *Consol. Home Supply Ditch Co. v. Hamlin,* 6 Colo.App. 341, 40 P. 582 (1894)).[6]

---

5. A private nuisance is distinguishable from a public nuisance. A private nuisance is a tort against land and the plaintiff's actions must always be founded upon his interest in the land. A public or common nuisance covers the invasion of public rights, that is, rights common to all members of the public. *See* Restatement (Second) of Torts §§ 821B, 821D. Here, we refer only to a private nuisance.

6. In *Consol. Home Supply Ditch Co.,* the court of appeals found that seepage from defendant's irrigation ditch onto plaintiff's farm lands constituted a continuing trespass or nuisance. 6 Colo.App. at 347, 40 P. at 584. Upon rehearing, the court of appeals reconsidered and found that seepage from ditches was unabatable and would continue indefinitely, and thus constituted a permanent tort. *Id.* at 356, 40 P. at 587. Although our opinion in *Wright* relied upon the earlier decision in *Consol. Home Supply Ditch Co.,* we reaffirmed

The plaintiff's claim was not barred by the statute of limitations because "the continuing of a trespass or nuisance from day to day is considered in law a several trespass on each day." *Id.* In other words, for statute of limitations purposes, a claim would only accrue once the defendant abated the nuisance and removed the cause of damage.[7]

Since *Wright*, Colorado courts have applied the concept of continuing trespass to various factual contexts; however, these cases reflect little additional analysis. *See Steiger v. Burroughs*, 878 P.2d 131, 136 (Colo.App.1994)(defendant's house remaining on plaintiff's property constituted continuing trespass); *Cobai v. Young*, 679 P.2d 121, 123–24 (Colo.App.1984)(snow sliding from defendant's roof to plaintiff's house constituted continuing trespass); *Docheff v. City of Broomfield*, 623 P.2d 69, 71 (Colo.App.1980)(defendant's storm drainage system flooding plaintiff's adjacent property constituted continuing trespass). Notably, we have also held a defendant liable for continuing nuisance for discharging pollution into a creek used by farmers downstream to irrigate land and crops. *See Wilmore v. Chain O'Mines, Inc.*, 96 Colo. 319, 327, 44 P.2d 1024, 1028 (1935).

Although continuing trespass and nuisance remain viable concepts in Colorado under *Wright* and its progeny, not every trespass or nuisance that continues is necessarily regarded as one. Harper et al., *The Law of Torts* § 1.7. Colorado courts have embraced the concept of "permanent trespass and nuisance" to distinguish those unique factual situations—primarily in the context of irrigation ditches and railway lines—where the trespass or nuisance would and should continue indefinitely. *See Middelkamp*, 46 Colo. 102, 103 P. 280; *Seven Lakes Reservoir Co. v. Majors*, 69 Colo. 590, 196 P. 334 (1921); *Hickman*, 748 P.2d at 1350.

For example, in *Middelkamp*, the defendant built an irrigation ditch in loose, porous soil. As a result of the loose soil, water seeped through the bottom and sides of the ditch, causing flooding damage to plaintiff's adjacent properties. 46 Colo. at 104, 103 P. at 280. We found that the irrigation ditch, as a permanent improvement, was distinguishable from the abatable nuisance we analyzed in *Wright* (house adjacent to cattle slaughterhouse).

We reasoned that irrigation ditches were intended to be permanent structures and seep by necessity. *Id.* at 107–09, 103 P. at 282. Because the irrigation ditches were permanent, the seepage would continue indefinitely absent extraordinary measures. *Id.* at 115, 103 P. at 283.[8]

Even if the seepage was abatable, we declined to require it for defendants who lawfully constructed irrigation ditches because they represented a class of enterprises "so vital to the future development of our state." *Id.* at 115, 103 P. at 284; *see also Ft. Lyon Canal Co. v. Bennett*, 61 Colo. 111, 123, 156 P. 604, 609 (1916) (declining to find that seepage from an irrigation ditch constituted a continuing nuisance because maintenance of the siphon was a "laudable occupation authorized by the laws and statutes of the state."). The practical impact of the *Middelkamp* decision was that an action to recover

---

the continuing tort concept and the viability of *Wright* in *Middelkamp v. Bessemer Irrigating Ditch Co.*, 46 Colo. 102, 103 P. 280 (1909).

7. In *Wright*, the plaintiff sued for injunctive relief. 40 Colo. at 439, 91 P. at 43. This is consistent with the concept of continuing trespass or nuisance because the defendant's tortious acts or omissions have not ceased. Damages are available for continuing torts but are limited to injuries sustained up to the time of suit. *See Denver City Irrigation & Water Co. v. Middaugh*, 12 Colo. 434, 443–44, 21 P. 565, 569 (1889).

8. Other jurisdictions have attempted to clarify the distinctions between continuing and permanent torts by focusing either on the "cause" of the harm, *see Breiggar Prop., L.C. v. H.E. Davis &* *Sons, Inc.*, 52 P.3d 1133, 1135 (Utah 2002)(looking solely at the act constituting trespass, not the harm resulting from the act), or the "harm" resulting from that cause. *See Wood v. Amer. Aggregates Corp.*, 67 Ohio App.3d 41, 585 N.E.2d 970, 973 (1990)(focusing on continuing damages, not conduct). We do not find these classifications helpful to our analysis, particularly in the context of this case where it is difficult to determine whether the toxic pollution plume is the cause of Hoery's alleged harm or the harm itself. As we held in *Middelkamp*, they are usually linked: because the cause of the injury was a permanent structure that was intended to last indefinitely, the injury itself was permanent. 46 Colo. at 109, 103 P. at 282.

for present and future damages would accrue when the lands were first visibly affected. 46 Colo. at 112, 103 P. at 283.

In addition to irrigation ditches, we have applied the concept of permanent tort to the construction and maintenance of railway lines. *See Denver & Santa Fe Ry. Co. v. Hannegan*, 43 Colo. 122, 127, 95 P. 343, 345 (1908). In *Denver & Santa Fe Ry. Co.*, the city authorized the defendants to construct railway lines and run trains on a street abutting the plaintiffs' property. Because of the permanent nature of the railway line and the legal authorization required to construct a railway track, we held that plaintiffs could only recover for permanent interference with their land. Thus, we held that the statute of limitations would begin to run from the first occupancy of the street for railway purposes. *Id.* at 127, 95 P. at 345. Similar to the context of irrigation ditches, defendants who lawfully constructed and maintained railway lines represented an enterprise that was vital to the future development of the state.

In sum, Colorado law recognizes the concepts of continuing trespass and nuisance for those property invasions where a defendant fails to stop or remove continuing, harmful physical conditions that are wrongfully placed on a plaintiff's land.[9] The only exception is a factual situation—such as an irrigation ditch or a railway line—where the property invasion will and should continue indefinitely because defendants, with lawful authority, constructed a socially beneficial structure intended to be permanent.

## C. Whether the Ongoing Presence and Continued Migration of Toxic Chemicals Each Constitutes a Continuing Trespass and Nuisance under Colorado Law

■ Having reviewed our cases regarding continuing and permanent torts, we turn to the certified questions before us. Specifically, we must determine whether the continuing migration and ongoing presence of toxic pollution on a plaintiff's property constitutes a continuing trespass and/or nuisance, even though the condition causing that pollution has ceased.

Hoery contends that he asserted continuing trespass and nuisance claims under *Wright* because the United States remains liable for any harmful conditions it causes as long as those conditions continue to exist and cause injury. Under his theory, the migration of toxic chemicals and their continued presence on his property are still wrongful acts by the United States, which should be responsible until it stops the migration and removes the toxic chemicals.

In response, the United States argues that the claims alleged here cannot be continuing because any "wrongful conduct" that may have constituted a trespass or nuisance ceased in 1994, when the United States stopped operating Lowry as a military base. Because the tortious acts have stopped, the United States claims, the continued migration and ongoing presence of toxic chemicals on Hoery's property represent the damage caused by that tortious activity, but not the activity itself. In other words, the continued migration and ongoing presence of chemicals represent property damage caused by past acts. Therefore, the United States claims there is no continuing trespass and nuisance.

In support of its argument, the United States claims that our irrigation ditch cases hold that upon cessation of the negligent or wrongful act that caused the seepage, the claim accrues upon the discovery of the alleged property damage. In essence, the

---

**9.** We have held that holders of water rights may employ underground, as well as surface water bearing formations in Colorado, for the placement of water into, occupation of water in, conveyance of water through, and withdrawal of water from the natural water bearing formations in the exercise of water use rights. *Bd. of County Comm'rs v. Park County Sportsmen's Ranch*, 45 P.3d 693, 710 (Colo.2002). In that case, we rejected the claim of landowners that the artificial recharge and storage of water migrating through aquifers that extended under the surface of their land constituted a trespass. *Id.* at 715. We reserved, for future decision, cases alleging tortious interference with the "use and enjoyment of the Landowners' surface or subsurface estate." *Id.* at 714–15 n. 36 & n. 39. In the case before us, Hoery alleges that chemicals the United States introduced into the groundwater tortiously interfere with his use and enjoyment of the water he pumps from his well for lawn and garden irrigation.

United States argues that we should extend our permanent tort concept to the facts alleged here.

Technically speaking, this is an issue of first impression in Colorado. Although we have recognized the concepts of continuing and permanent torts, we have not addressed an environmental contamination case where the contamination remains and continues to migrate daily onto a plaintiff's property, but where the cause of the contamination has ceased.[10]

While we have not addressed this issue, other jurisdictions have. A number of jurisdictions have determined that the cessation of the condition causing the contamination is not material. These jurisdictions have held that even if the condition causing the contamination has ceased, provided the contamination remains on the plaintiff's land, or continues to migrate onto the plaintiff's land, the defendant remains liable for a continuing tort. See Nieman v. NLO Inc., 108 F.3d 1546, 1559 (6th Cir.1997)(nuclear processing facility stopped operating but uranium contamination remained on plaintiff's property); Arcade Water Dist. v. United States, 940 F.2d 1265, 1266 (9th Cir.1991)(laundry facility closed but contamination continued to leach into plaintiff's well); In re ASARCO/Vashon–Maury Island Litig., No. COO–695Z, 2001 U.S. Dist. LEXIS 7154, at *11–13 (W.D.Wash. May 23, 2001)(smokestack no longer operational but contaminated soil remained on plaintiff's property); Taygeta Corp. v. Varian Assoc. Inc., 436 Mass. 217, 763 N.E.2d 1053, 1065 (Mass.2002)(although defendant stopped dumping hazardous material years earlier, the remaining presence of the hazardous material on plaintiff's property was an ongoing source of groundwater contamination that continued to flow unabated onto the site); Kulpa v. Stewart's Ice Cream, 144 A.D.2d 205, 534 N.Y.S.2d 518, 520 (N.Y.App.Div.1988)(contamination remained in plaintiff's well, even though underground

gasoline storage tanks were drained and stopped leaking years earlier).

Arcade is particularly instructive because the facts are analogous to this case. In Arcade, the United States operated an army laundry facility from 1941 until 1973. During that time period, the laundry discharged waste residues into the ground. A domestic-use water well, operated by the Arcade Water District, was located approximately 2,000 feet from the laundry facility. Arcade, 940 F.2d at 1266. Although the United States closed the laundry facility in 1973, subsequent testing of Arcade's well revealed that it was contaminated and that ground contamination from the laundry continued to leach into Arcade's well. In 1984, Arcade filed a FTCA suit against the United States, alleging that the release of laundry wastes constituted a continuing nuisance. The District Court dismissed the complaint as time-barred.

On appeal the Ninth Circuit reversed, holding that it was not material that the laundry facility was no longer operational. In determining under California law whether the nuisance was continuing, the Ninth Circuit reasoned that the most salient allegation was that contamination continued to leach into Arcade's well. Id. at 1268. That court concluded that because Arcade presented an engineer's affidavit stating that he could not say the contamination was permanent, it could not hold as a matter of law that the nuisance was permanent. Thus, the court held that Arcade alleged a set of facts which constituted a continuing nuisance.

We find the analysis in Arcade and other cases that have considered this issue persuasive and consistent with Wright and our continuing tort concept. Therefore, we agree with Hoery that the ongoing presence and continued migration of toxic chemicals originally emanating from Lowry constitute a continuing trespass and nuisance and decline to extend the permanent tort concept of the

---

**10.** The United States asserts that Kohler v. Germain Inv. Co., 934 P.2d 867, 870 (Colo.App.1996) is analogous because the court of appeals held that for statute of limitations purposes, any claim for property damage arising from migration of groundwater contaminated with petroleum accrued upon the property owner's discovery that

the contaminated groundwater had migrated under his property. Kohler is not helpful to our analysis because there was no evidence in that case that the contamination was ongoing or that it remained on plaintiff's property after the defendant's petroleum storage tanks stopped leaking. Id. at 870.

irrigation ditch cases to the facts alleged here.

For purposes of answering the certified questions before us, no dispute exists about whether the United States released TCE into the ground and by doing so, invaded Hoery's property. The property invasion constituted a trespass because the toxic pollution released by the United States physically intruded upon Hoery's property without his permission. *See Public Serv. Co. of Colorado*, 27 P.3d at 389. It also constituted a nuisance because the toxic pollution released by the United States substantially invaded Hoery's interest in the use and enjoyment of his property. *See id.* at 391.

We also hold that these property invasions by way of trespass and nuisance are continuing. The allegations in this case support such a finding on two grounds. First, TCE pollution remains on Hoery's property. The failure of the United States to remove the pollution from Hoery's property which it wrongfully placed there constitutes a continuing property invasion for the entire time the contamination remains. *Wright*, 40 Colo. at 440, 91 P. at 44; Restatement (Second) of Torts §§ 161 cmt. b, 834 cmt. e; *Nieman*, 108 F.3d at 1559; *ASARCO*, 2001 U.S. Dist. LEXIS 7154 at *11–13; *Kulpa*, 534 N.Y.S.2d at 520. Second, the toxic pollution continues to migrate onto his property on a daily basis. The failure of the United States to stop the toxic pollution plume that it created from entering Hoery's property also constitutes a continuing property invasion. *Wright*, 40 Colo. at 440, 91 P. at 44; *Arcade*, 940 F.2d at 1268; *Taygeta*, 763 N.E.2d at 1065.

Pursuant to the fundamental principles of tort law, the United States's failure to act, or its omissions, can be the basis for tortious conduct.[11] As the Restatement explains, "The word 'actor' is used merely for convenience, and is used not only in its primary sense of denoting one who acts, but also as denoting one who deliberately or inadvertently fails to act." Restatement (Second) of Torts § 3 cmt. a; § 158 cmt. l ("A trespass on land may be by a failure of the actor to

leave the land of which the other is in possession."); *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603, 614 (2002)("[W]e hereby hold that where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or *when the tortious overt acts or omissions cease.*")

These continuing property invasions are not dependent upon whether the United States still releases TCE into the ground. We decline to hold, as urged by the United States, that its wrongful conduct has ceased and that the contamination of Hoery's property represents only the product of that prior conduct. *Taygeta*, 763 N.E.2d at 1058, 1065 (rejecting the trial court's finding that the ongoing contamination was only a product of the previously terminated tortious conduct of dumping hazardous wastes and thus not itself a continuing nuisance); *ASARCO*, 2001 U.S. Dist. LEXIS 7154 at *13 (rejecting defendant's argument that although contamination remained in plaintiff's soil, its tortious conduct ceased years earlier when it stopped operating its smokestack). The daily migration and presence of those chemicals on Hoery's property constitute the continuing torts of trespass and nuisance in this case. While these continuing property invasions remain, it is immaterial whether the United States continues to release toxic pollutants from Lowry.

The irrigation ditch cases do not change our conclusion. In those cases, we held that defendants lawfully constructed permanent improvements that would and should continue indefinitely. *See Middelkamp*, 46 Colo. at 107–09, 103 P. at 283. Indeed, such defendants represented an enterprise that was vital to the development of our state. *Id.* The record does not indicate that the continued migration or ongoing presence of toxic pollution plumes underneath Hoery's residential property will or should continue indefinitely. Rather, the record at this stage of the litigation indicates that the contamination is not permanent—that is, it is remedia-

11. This is consistent with federal law. Under the FTCA, the United States is liable "in accordance with the law of the place where the act or *omis-* *sions* occurred." 28 U.S.C. § 1346(b)(emphasis added).

ble or abatable.[12] Although the United States did not address the factual issue, Hoery's expert opined under oath that Hoery's property could be remediated. *See supra* n. 4.

We also note that the continued contamination does not benefit the development of our state. In contrast to our policy supporting our holding that the seepage from irrigation ditches constituted a permanent property invasion, there exists no sound public policy supporting the classification of contamination from the release of toxic chemicals as a permanent property invasion. One basis for classifying a property invasion as permanent is whether public policy favors the continuation of the invasion. *See* Dan B. Dobbs, *Law of Torts* § 57 (2000). Irrigation ditches or railway lines are permanent improvements that help develop the state and should be encouraged. This rationale comports with the underlying principles of tort law. *See Denver Publ'g Co. v. Bueno,* 54 P.3d 893, 897–98 (Colo.2002) ("Torts are designed to encourage socially beneficial conduct and deter wrongful conduct."); Restatement (Second) of Torts § 901(c). Although plaintiffs still suffered a property invasion in such cases, we limited their recovery to one action for all present and future damages.

Here, we find that public policy favors the discontinuance of both the continuing migration and the ongoing presence of toxic chemicals into Hoery's property and irrigation well. Under Colorado law, a tortfeasor's liability for continuing trespass and nuisance creates a new cause of action each day the property invasion continues. Hence, the alleged tortfeasor has an incentive to stop the property invasion and remove the cause of damage.

## V. CONCLUSION

For the reasons stated above, we answer both certified questions in the affirmative

and return this case back to the Tenth Circuit for further proceedings.

Justice KOURLIS dissents, and Justice COATS joins in the dissent.

Justice KOURLIS, dissenting:

Tort law is the area of the law which regulates *conduct* among members of our society. Through the vehicle of monetary payment from the tortfeasor to the injured party, we both deter and punish *conduct* that we deem objectionable and also attempt to restore the injured party to parity. Statutes of limitation constrain injured parties and direct them to file their claims within prescribed periods of time. In order to assure that a hidden tort does not go unpunished, statutes of limitation only begin to run when the injured party discovers, or should have discovered, the tort.

Today, the majority, in consideration of environmental damage to the lands of the plaintiff, redefines the tort of continuous trespass to include any trespass that is ongoing. This focus upon the nature of the injuries resulting from a trespasser's actions rather than the character of his actions divorces the plaintiff's claim from the law of torts and the principles that it serves.

In my view, neither the continued migration of toxic chemicals nor the ongoing presence of those chemicals on plaintiff's property constitute a continuing trespass or nuisance. Rather, the tort at issue is a permanent trespass or nuisance, for which the statutes of limitation began to run upon discovery. Allowing the acts here to be characterized as a continuing tort or nuisance muddies the distinction the law should make between a continuous and a permanent tort or nuisance, and obviates the statutes of limitation. In my view, this construction undermines long-established principles of tort law, evident in our precedent. Because I would answer both certified questions in the negative, I respectfully dissent.

---

12. We express no opinion nor were we asked to define the legal standards to apply to a factual determination of whether the continued migra-

tion and ongoing presence of the toxic pollution can be abated.

## I. Permanent v. Continuous Torts

The difficulties posed by attempts to differentiate between the two forms of trespass have vexed our court and others for over a century. Two problems are inherent in the concept: the first being the question of when the injury becomes actionable, and therefore, when the statutes of limitation begins to run; and the second being when and how the injury is quantified. Recently, the question of how to properly classify a tort as continuing or permanent has been raised frequently in the pollution context, where the noxious and insidious nature of toxic contamination has created new problems in distinguishing between the two classifications.

The case law and treatises appear to represent several lines of thought in differentiating permanent from continuous torts. The first theory focuses on the nature of the conduct that caused the tort and labels as continuous only torts that result from ongoing actions by the tortfeasor. The second theory looks rather to the nature of the injury caused by the tort and concludes that a tort is continuous when the damages are not capable of final assessment at the time the action is filed. Lastly, some of the cases that separate continuous from permanent torts do so from a result-oriented stance designed to allow a deserving plaintiff to avoid the harsh ramifications of a statutes of limitation.

### A. Conduct Based Distinctions

In my view, the theory that concentrates on the nature of the conduct of the tortfeasor is the one that comports best with general tort law and with concepts of predictability and deterrence. Here, whether a trespass is permanent or continuous depends upon whether the tortfeasor perpetuates the injury through overt, persistent and ongoing acts of trespass. When the acts that caused the injury are complete, the trespass is permanent. When the tortfeasor continues to perform acts resulting in an invasion of another's property, then the tort is continuous and each new act creates a new cause of action. Many courts have reasoned that the classification of a tort as permanent or ongoing depends upon whether the tortfeasor contin-

ues to act. These courts refuse to classify the injury on the basis of the durability of the injuries caused by the tortfeasor's actions.

Recently, the Supreme Court of Utah considered the issue, and stated "in classifying a trespass as permanent or continuing, we look solely to the *act* constituting the trespass, and not to the *harm* resulting from the act." *Breiggar Properties, L.C. v. H.E. Davis & Sons, Inc.*, 52 P.3d 1133, 1135 (Utah 2002). The court held that the continued presence of a pile of debris on plaintiff's property did not constitute a continuing trespass, even if the trespass could be abated at a reasonable cost. The court reasoned: "We characterize a trespass as 'permanent' to acknowledge that the act or acts of trespass have ceased to occur. We characterize a trespass as 'continuing' to acknowledge that multiple acts of trespass have occurred, and continue to occur...." *Id.* The court also noted that to classify a trespass as continuing so long as the harm it caused could reasonably be abated "would clearly undermine the purposes behind statutes of limitations." *Id.* at 1136.

Similarly, the Supreme Court of Pennsylvania has refused to classify an ongoing presence as a continuing trespass. The court cautioned, "a continuing trespass must be distinguished from a trespass that effects a permanent change in the condition of the land. The latter, while resulting in a continuing harm, does not subject the trespasser to liability for a continuing trespass." *Sustrik v. Jones & Laughlin Steel Corp.*, 413 Pa. 324, 197 A.2d 44, 46 (1964) (refusing to classify the trespass as continuing when defendant installed a sewer line across plaintiff's property).

In Louisiana, the supreme court considered the nature of continuing torts in general and found, " '[a] continuing tort is occasioned by [the continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act.' " *In re Med. Review Panel for the Claim of Maria Moses*, 788 So.2d 1173, 1183 (La.2001) (quoting *Crump v. Sabine River Auth.*, 737 So.2d 720, 728 (La. 1999)) (drawing analogies from continuing trespass cases to support holding that for medical malpractice claims, continuing tort

doctrine may not be invoked absent a continued course of tortious treatment or conduct). The court explained, "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." *Id.*

In pollution cases, injuries are often difficult to discover, such that a court may by inclined to classify an invasion by toxic chemicals as continuing to protect the plaintiff's cause of action. However, the Supreme Court of Alaska observed that the appropriate solution to such dilemmas lies not in reclassifying the nature of the trespass but in considering when the cause of action accrues. The court elaborated that while pollutants may be difficult to discover "[t]hat characteristic, however, does not militate in favor of describing the defendants' alleged actions as a continuing nuisance or trespass. Rather, the discovery rule adequately addresses this problem...." *FDIC v. Laidlaw Transit, Inc.*, 21 P.3d 344, 356 (Alaska 2001).

### B. Injury–Based Distinctions

The other approach is to evaluate the nature of the injury and classify the tort accordingly. When a trespass produces a permanent, ongoing, injury to the land, the trespass can be considered complete when it is committed. W. Page Keeton, *Prosser and Keeton on Torts* § 13, at 83 (5th ed.1984). When the injury is caused by a condition on the trespasser's land, such that the trespasser is more likely to pay the plaintiff's claim than terminate the invasion causing injury, the condition may be considered permanent. *Id.* at 84. Courts also consider whether the condition is permanent in character, "in light of its physical durability." *Id.*

In this context, permanent trespass offers the plaintiff the opportunity to recover for all of his injuries, past, present, and future, in one action. Dan B. Dobbs, *The Law of Torts* § 55, at 115 (2000). However, a plaintiff bringing a continuing trespass action may only bring suit for those injuries he has sustained up to the time of suit. *Id.* at 116. The plaintiff is prevented from forecasting future injury because the trespasser may, at any time, alleviate plaintiff's injury by removing the offensive chattel, obviating any future claim for recovery. *Id.* Where the land itself is damaged, such that it may never recover from the invasion, the action is more appropriately defined as one arising out of a permanent tort.

Section 158(c) of the *Restatement (Second) of Torts* (1965) subjects a trespasser for liability for failure "to remove from the land a thing which he is under a duty to remove." Section 161(1) elaborates that failure to remove "a structure, chattel, or other thing which the actor has tortiously placed there" constitutes a continuing trespass "for the entire time during which the thing is wrongfully on the land." *Restatement* §§ 161(1); 161 cmt. b. This provision, wherein the trespassers' failure to remove the object is essentially an action by omission, assumes that the material is readily removable, and further, that removal of the object will fully repair the land.

In contrast, permanent injuries to land are addressed in section 162, wherein comment (e) provides:

> A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land.... [T]he fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since his conduct has once for all produced a permanent injury to the land, the possessor's right is to full redress in a single action for the trespass....

Classifying as continuing a trespass that produced a permanent injury to land would require a court to distinguish among a plaintiff's unseverable injuries, to determine which injuries are time-barred and which survive. Recognizing the trespass as permanent appropriately affords the plaintiff the opportunity to recover for the true cost of his injuries: the diminution in value of his property in appreciation of the fact that his lands, in the foreseeable future, will never be the same.

II. The Development of Trespass in Colorado

Our Colorado case law is more consistent with the theory that focuses primarily on the nature of the damages resulting from a trespasser's actions. This court has not differentiated among trespasses on the basis of whether an invasion itself is ongoing, or produces ongoing injuries, but rather has classified the trespass by considering whether the injuries were of such a durable nature as to render them assessable.

This focus stems from the nature of the cases before the court, in which the trespasser committed a tort in the past, but the plaintiff's injuries were ongoing. This court developed a system of assessment based on damages, which encouraged plaintiffs whose damages were readily ascertainable to bring their claims for relief in a timely manner.

As early as 1883, this court ruled that when an act produces injuries that are both "continuing and permanent," a plaintiff could recover for the whole damage that would result from the act. *City of Denver v. Bayer,* 7 Colo. 113, 127, 2 P. 6, 15 (1883). Later, we explained that an injury is permanent when the instrumentality producing the injury will continue to produce the same injuries as long as the instrumentality exists in its present state. *See Middelkamp v. Bessemer Irrigating Ditch Co.,* 46 Colo. 102, 109, 103 P. 280, 282 (1909) (finding permanent trespass when seepage from a permanent irrigation ditch constructed by defendants caused waters to percolate through plaintiff's land, producing visible injuries). Where the court could safely speculate as to the past, present, and future costs of an injury, the court found the injury to be permanent and the plaintiff was entitled to seek recovery for all his damages in one suit. The damages did not need to be completely predictable. *See id.* at 112, 103 P. at 283; *Hous. Auth. v. Leo A. Daly Co.,* 35 Colo.App. 244, 247, 533 P.2d 937, 938 (1975).

To the contrary, a trespass or nuisance was found to be continuous if it caused injuries whose costs were not readily assessable, for example, if they were caused by sporadic activity, or if they depended upon an act of nature, such that it was impossible to speculate as to how much damage was likely to occur in the future. *See, e.g., Docheff v. City of Broomfield,* 623 P.2d 69 (Colo.App.1980). In these cases, the plaintiff was forced to either seek an injunction or bring multiple actions against the trespasser as his injuries became readily identifiable.

We have distinguished the consequences of the two classifications, determining that for "trespasses and nuisances that are not of a permanent character, damages can only be recovered for the injury sustained up to the time of . . . suit, but, [for those] of a permanent character, a single recovery may be had for the whole damage resulting from the act." *Denver City Irrigation & Water Co. v. Middaugh,* 12 Colo. 434, 444, 21 P. 565, 569 (1889). It followed then, that when the object of suit was to recover the value of land destroyed by an injury, such that all damage, past, present, and future, could be assessed, the action could and should be a single action for permanent trespass. *See Seven Lakes Reservoir Co. v. Majors,* 69 Colo. 590, 595, 196 P. 334, 335 (1921).

Although it could often operate to assist the plaintiff, the forecasting of injury has not been so much a privilege as a requirement. *See Middaugh,* 12 Colo. at 443, 21 P. at 568–9 (refusing to permit plaintiff to bring additional actions for damage to his land stating that there existed a "rule requiring injuries resulting from seepage and leakage to be anticipated . . . such injuries should be included in the original assessment.").

Not surprisingly, this court has more typically addressed continuous trespass through equitable relief. The same characteristics that render an injury difficult to quantify, also serve to support a conclusion that the injury cannot be adequately redressed at law. Therefore, plaintiffs have brought their actions for continuous trespass in equity, seeking injunctive relief. *Wright v. Ulrich,* 40 Colo. 437, 439, 91 P. 43, 43 (1907) (upholding finding that slaughterhouse presented a continuous nuisance because "the damages to plaintiff therefrom are of such a nature and character, of such proportions and so peculiar to herself, as to entitle her to equitable relief" and therefore upholding injunction enjoining reconstruction of the slaughterhouse);

*Koch v. Story,* 47 Colo. 335, 344, 107 P. 1093, 1097 (1910) ("[A] court of equity will enjoin destructive and irreparable and continuous trespasses ... where no adequate remedy at law is afforded."); *Wilmore v. Chain O'Mines, Inc.,* 96 Colo. 319, 44 P.2d 1024, (1934) (upholding an injunction to prevent mill from continuing to pollute stream to the extent that extraneous material injured plaintiff's right to use the water); *Docheff,* 623 P.2d at 71 (approving injunction for continuing trespass noting, "Damages would be an inadequate remedy because the repetitive or continuous nature of the city's trespass would require a multiplicity of suits to determine the varying amount of damages.").

Typically, when a trespass causes damage to real estate, the measure of the damage is the diminution in market value of the land caused by the trespass. *Engler v. Hatch,* 472 P.2d 680, 682 (Colo.App.1970). However, where the market value approach will not serve to reimburse the plaintiff for the losses he has actually suffered, the court may assess other damages, such as damages for restoration costs. *Bd. of County Comm'rs v. Slovek,* 723 P.2d 1309, 1315–16 (Colo.1986). The court may award restoration costs even when they exceed the original value of the property, so long as the damage is reparable. *Id.* at 1317. In deciding how to award damages, however, the court should consider the possibility that if the plaintiff is awarded restoration costs in excess of the diminution in market value of the property, the plaintiff may sell the property and pocket the difference. *Id.*

The doctrine of continuing trespass has long afforded relief to plaintiffs whose injuries are of such an unpredictable nature that they may not be reduced to a dollar value award.

### III. Application to this Case

In this case, the majority holds that the United States is guilty of a continuing property invasion for the entire time the contamination remains. Maj. op. at 222. In my view, that result does not comport with the Colorado case law and does not create a clear separation between permanent and continuous torts for future application. The majori-

ty uses this classification to save plaintiff's claim from operation of a statutes of limitation without regard to whether his damages might earlier have been discovered, assessed or abated. Thus, in my view, the majority's holding stands in contrast to our earlier case law.

For example, as support, the majority relies upon *Wright,* in which the court enjoined the defendant from building a slaughterhouse because it would create a continuing nuisance. The slaughterhouse was not, at that time, causing an invasion of the plaintiff's property; whereas here, the toxic plume is creating a present invasion of plaintiff's property. Furthermore, the majority's approach also contravenes the manner in which we have awarded prior plaintiffs relief in trespass cases. In prior cases where an invasion occurred and the offensive material remained, we permitted the plaintiff to recover the full value of his assessable injuries, rather than ordering the defendant to remove the offending material. *See, e.g., Colo. Bridge & Constr. Co. v. Preuit,* 75 Colo. 107, 224 P. 222 (1924) (permitting plaintiff to recover the cost of removing the asphalt defendant dumped on his property, despite the fact that the cost of removal, $10, greatly exceeded the value of the land, $0.07).

Admittedly, the majority is addressing this issue in something of a vacuum, with no clear guidance from other courts or from the commentators. For example, one commentator notes that an action for trespass may not even lie, as the lack of intentional action on the part of the defendant may render the action one for 'trespass on the case'. *See* 7 Stuart M. Speiser et al., *The American Law of Torts* § 23:2, at 598 (1990). This scholar has determined:

> [T]respass is not the proper remedy, and case alone should be resorted to, where the defendant applies a running stream to such uses as to render it impure and fill it with a sediment which is deposited on the land of a lower proprietor ... damaging his land, or where land is injured from seepage from an irrigation ditch, in the absence of anything to show an intention to cause the water to seep from the ditch.

*Id.* Others have suggested that the action may properly lie in nuisance, rather than in trespass. *See* Dan B. Dobbs, *The Law of Torts* § 55, at 112 (2000) ("[M]igration or percolation of wastes beneath the surface is often considered to be in the domain of nuisance law rather than the domain of trespass.").

Even if the action is considered to lie in trespass, courts are divided as to whether the tort is continuous or permanent. *See id.* at § 57, at 115 (explaining that persisting invasions of land by way of trespass or nuisance have sparked such "[c]onflicting decisions and factual variety [as to] make statement of a general rule perilous."). At least one court, the Iowa Supreme Court, has determined that it is futile to attempt to classify chemical contamination as continuing or permanent. The court observed, "This injury is temporary in the sense that the cause of the pollution has been discovered and abated .... permanent in the sense that it constitutes damage to the ground itself and will continue for an indefinite but significant period of time." *Mel Foster Co. Props., Inc. v. Amoco,* 427 N.W.2d 171, 175 (Iowa 1988).

## IV. Ramifications

When a court classifies a tort as continuous, the classification operates to uncouple prospective plaintiffs' claims from the constraints of statutes of limitation. *Middelkamp v. Bessemer Irrigating Ditch Co.,* 46 Colo. 102, 110, 103 P. 280, 282 (1909) ("we cannot agree with plaintiff that the seepage makes of the canal a nuisance for which successive actions can be brought until it is abated, for then the statute of limitations would never commence to run"). This can be especially problematic in pollution cases. As the court of appeals recently observed:

> [I]f we interpret "disposal" here as an act that endures until hazardous wastes no longer percolate through or exist in soil or water, then disposal effectively continues until the substance dissipates to the point where it is no longer hazardous, possibly eons later, or until remediation occurs. Under this interpretation, the limitation period would begin only at this possibly remote moment in time, a time that, in all probability, could seldom, if ever, conclusively be pinpointed.

*People v. Thoro Products Co.,* 45 P.3d 737, 742 (Colo.App.2001).

Statutes of limitations are policy-driven. They delimit claims, and cut off untimely claims even if otherwise viable and sympathetic. "Statutes of limitation recognize that eventual repose creates desirable security and stability in human affairs. By penalizing unreasonable delay, statutes of limitation compel litigants to pursue their claims in a timely manner." *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1099 (Colo.1996). When a plaintiff must investigate to determine the exact cause of his injuries, the statutes provide time for him to do so. *See Hous. Auth. v. Leo A. Daly Co.,* 35 Colo.App. 244, 247, 533 P.2d 937, 938 (1975).

Clearly, the distinction between a continuing or permanent trespass or nuisance cannot be crafted backwards: driven by considerations of whether it is desirable to circumvent the statutes of limitation. The standards by which we classify the two torts must be concrete and independent, so that the statute may later be applied in a predictable and even-handed manner. Should the legislature wish to carve out an exception to the statutes of limitation for permanent toxic torts, it may do so. *Compare* § 13–80–102, 5 C.R.S. (2002) (tort actions for trespass shall be commenced within two years after the cause of action accrues), *with* § 13–80–103.5(a) (actions to recover a liquidated debt shall be brought within six years); § 13–80–103.5(b) (actions for arrearage of rent shall be brought within six years); § 13–80–103.7 ("any civil action based on a sexual assault ... shall be commenced within six years after a disability has been removed for a person under disability").

The majority distinguishes this case from a long line of Colorado cases holding that migration of water onto neighboring lands creates a permanent injury, provided the resulting damage is assessable, on the tenuous ground that the defendants in these earlier cases "represented an enterprise that was vital to the development of our state." Maj. op. at 222. The majority concludes that

plaintiffs whose lands are contaminated by the migration of toxic chemicals need not seek compensation for their injuries within the statutorily mandated timeframe. *C.f. Middelkamp*, 46 Colo. at 113, 103 P. at 283 (adopting the rule that "the statute of limitations begins to run from the date the lands were first visibly affected and injured by the seepage which, and with its continuance from the same source, caused the injury"); *Hankins v. Borland*, 163 Colo. 575, 581–82, 431 P.2d 1007, 1010–11 (1967) ("[T]he right to sue for damage from seepage is barred by the six year statute of limitations with the cause of action accruing at the time the land is first visibly affected by the seepage."); *Rose v. Agricultural Ditch & Reservoir Co.*, 70 Colo. 446, 202 P. 112 (1921) (holding that an action for seepage brought more than six years after the seepage visibly affected plaintiff's land was barred by the statutes of limitation); *Seven Lakes Reservoir Co. v. Majors*, 69 Colo. 590, 598, 196 P. 334, 336 (1921) (finding that statutes of limitation accrued when defendants began using the creek that overflowed, because "the land was immediately damaged thereby"); *Hickman v. North Sterling Irrigation Dist.*, 748 P.2d 1349, 1350 (Colo.App.1987) ("In seepage cases, the claim accrues on the date the land is first visibly affected and injured by the seepage."); *Hous. Auth.*, 35 Colo.App. at 247, 533 P.2d at 938 ("In cases involving damage to land resulting from seepage of water it has been held that the cause of action accrues at the time the land is first visibly affected by the seepage.").

The majority's dividing line between permanent and continuous trespass appears to rest not on any physical difference between water seepage and contamination by toxic waste, but on an assessment that prior cases arose in the context of strong public policy incentives encouraging those defendants to construct the very structures that produced former plaintiffs' injuries. *C.f. Kohler v. Germain Inv. Co.*, 934 P.2d 867 (Colo.App.1996)(distinguishing contamination from seepage cases in consideration of the fact that damage is not visible, but must be determined by subsurface testing; however, still finding that earlier cause of action could be barred when injury disclosed by report);

*City of Denver v. Bayer*, 7 Colo. 113, 127, 2 P. 6, 15 (1883) (permitting plaintiff to bring one action for all of his damages for diminution in value of his property, "the injury being continuing and permanent," when railway obstructed ingress and egress to the property).

It seems to me that resting a tort law distinction on the question of whether public policy would champion the defendant or the plaintiff is unwise. To the contrary, it could be argued that statutes of limitation are of particular importance in environmental cases, where early discovery and remediation of injury benefits everyone. No matter how sympathetic the plaintiff's claims may be, tort law must be grounded in clear, enforceable distinctions that both regulate and deter behavior and delimit claims.

## V. Conclusion

Actions in tort permit those wronged by the actions of a tortfeasor to seek relief for their injuries. The law loses its force when it is severed from the principles it serves. Actions in tort require an intentional or negligent action on the part of the tortfeasor. Our prior focus on the nature of a plaintiff's damages, rather than the continuity of the actions of the trespasser, in fact served the principal interests herein detailed, but did not offer clear guidelines to differentiate between the torts. By now recognizing the passive migration of chemicals as a continuing tort, without any consideration for the termination of the tortfeasors' activities, this court contributes further confusion to this area of law, and undermines operation of statutes of limitation.

For all of the above reasons, I respectfully dissent and would answer each question in the negative.

I am authorized to state that JUSTICE COATS joins in this dissent.