Bissell, J.,
delivered the opinion of the court.
This is a controversy between Monash and Rhodes over title to the office of a member of the board of public works. The form in which the controversy presents itself is not a suit which directly involves the title in the sense that Rhodes is seeking to obtain possession of an office which Monash illegally holds, but it involves the title because it is a claim made by Rhodes against Monash for usurping, occupying, and enjoying that office for a term to which Rhodes claims he was entitled. There is no evidence exhibited in the abstract. We therefore take it, the matter was submitted to the trial court as a question of law whether under the facts as stated Rhodes was legally a member of the board of public works of the city *405 of Denver -when Monash. was appointed and usurped the office. We shall therefore assume as true whatever is stated by the complaint which we regard essential to the settlement of the dispute.
' The board of public works was created by an act amending the charter of the city of Denver in 1893. Session Laws, 1893, chap. 78. After its passage L. H. Flanders was appointed a member and having qualified entered on the discharge of the duties of the office. His term would have expired on the 1st day of June, 1895. Under the charter, as will be subsequently seen, the terms of all these officers began on the 1st of June and continued for two years. After the adjournment of the legislature, and in June, 1895, Flanders resigned. The then executive by appointment hi writing filed with the secretary of state, appointed Rhodes to that unexpired term. Rhodes qualified and accepted the office. He continued to perform his duties until the ensuing January, when the legislature again met. The term of the Governor who appointed Rhodes expired on the 8th of January, after the meeting of the legislature, and he went out of office not having theretofore sent Rhodes’s nomination into the senate for confirmation. On the 12th of March following, the then governor nominated Monash to the same office, and to fill Rhodes’s place on the theory that there was a vacancy because of the failure to send the other nomination in for confirmation, and he assumed to appoint Monash for the unexpired term as for a vacancy as well as for the two years next following the 1st of June. Monash qualified, went into office and refused to surrender to Rhodes. Rhodes apparently to prevent any unseemly conflict, and to avoid embarrassing the board as it was then constituted did not bring suit to oust Monash or to try the title, though he demanded possession and attempted to serve, but was denied the right. He afterwards sued Monash for the amount of his salary which Monash had received and appropriated. This was practically a mode of trying the title. He got judgment and Monash appeals.
*406 The section of the charter through which the rights of the parties are derived, is as follows:
“ Seo. 33. The governor of the state of Colorado shall immediately upon the passage of this act, and biennially thereafter by and with the advice and consent of the senate, appoint a board of public works consisting of a president to be appointed as president, and two other members, whose term of office shall begin on the first day of June following, and continue for two years, one of whom shall be of a different political party from the governor, with power of suspension or removal at any time, but not for political reasons and with power to fill vacancies in vacation of the senate, by appointment in writing filed with the secretary of state.”
The only question involved is the proper construction of this provision. When that is settled the case is determined.
The appellant earnestly contends that the matter is controlled by a section of the constitution. Section 6, article 4 of our organic law provides that the governor shall nominate and by and with the advice and consent of the senate appoint all officers provided for by the constitution and whose appointment is not otherwise provided for with certain powers of removal. This section also gives to the governor power to fill vacancies with this limitation, “ until the next meeting of the senate.” The whole argument of the appellant is based on this section which he attempts to use as a means for the interpretation of the statute and insists that it must be read in the light of it and that the constitutional provision must control the interpretation of the enactment. We do not assent. We do not believe the constitution has anything whatever to do with it, or that it can be rightfully taken either as a limitation on the powers of the executive, or as a means to construe the statute. We of course must admit the appellant’s contention, that where statutes and constitutions relate to the same subject and bear on the same matters either directly or indirectly, the constitutional provisions are of great aid and sometimes must control. It is equally true that you may not interpolate into the statute words which it does *407 not contain, or extract a meaning which is not expressed by it, or decide that the legislature had an intent not evidenced by the terms of its law, and that these words must be taken in their natural and ordinary signification. But as we look at it, all these rules though concededly correct and entirely applicable to some cases are without force in the present. As we view it this whole matter has been determined by the supreme court in an early case to which we recently had occasion to refer and on which we based our decision. The People ex rel. v. Osborne, 7 Colo. 605; Church v. Mullins, 10 Colo. App. 318.
It was contended in the last case, as in this, that the Osborne case did not control, that it was inapplicable because of the differences in the statute, and a very broad attempt is made to distinguish between the present controversy and that. The only distinction we are able to discover is that in the Osborne case, there is a distinct statement in the act that “ the governor shall have power to fill vacancies for the unexpired term.” These words, “ unexpired term,” are not in the statute under consideration, but we do not see that it makes any difference in the application of the rule. That distinguished tribunal, speaking by its then chief justice, said that the constitutional provision only applied to those offices which were created or provided for by the constitution, or to cases where the matters were not otherwise provided for by law. If that be so, then section 6 of article 4 is entirely irrelevant because the office of the board of public works is a creature of statute, was unknown to the constitution, was created by a later law, exists only under and by virtue of it, and the method prescribed for the appointment of the officials who constitute the board is provided for by the act creating it. According to the terms of the act the governor by and with the advice and consent of the senate appoints the members for terms of two years commencing on the 1st of June following the appointment. This much is plain. He may not appoint except by and with the advice and consent of the senate. ' When we come to the other question as to the method *408 of filling vacancies, it is less distinct and clear because while the power is absolutely given to the governor to fill vacancies occurring in the recess of the senate, and the mode of appointment is prescribed, there is no designation of the time for which they are to be appointed as there was in the case of the state industrial school. In the light of our determination of the proper construction of the word “ vacancy ” as applied to such offices this makes no distinguishing difference in the absence of a statutory limitation. It is of course conceded by counsel for the appellant, for the conclusion cannot be avoided, the appointment must be for some term and time. This much he admits. On the authority of the People ex rel. Gallup v. Green, 2 Wend. 267, he insists that the word “vacancy” applies only to the office and not to the term. There do not seem to be many cases in which this question has been considered, and in which a definition of that term as applied to similar facts has been accepted. Counsel cite no authorities on the question, though we have found a few which have more or less application. We cite them not as direct authorities but as affording arguments and illustrations in enforcement of the view which we have taken of it. Harrison et al. v. Simonds et al., 44 Conn. 318; Scott County v. Ring et al., 29 Minn. 398; Johnston v. Wilson et al., 2 N. H. 202; The People ex rel. Melony v. Whitman, 10 Cal. 38; People ex rel. v. Wells, 2 Cal. 198 ; State ex rel. v. Seay, 64 Mo. 89; Walsh v. Commonwealth ex rel. Evans, 89 Pa. St. 419; State ex rel. v. Messmore, 14 Wis. 163.
When it is conceded that the appointment must be for a term, that is, for a specific period of time, we think the whole question is resolved adversely to the appellant. That this must be true is plain when we consider public necessities and requirements, the duties Avhieh are laid on these officers and which they have to perform, and the absolute necessity that they should have a tenure independent of the will of the executive. There would be very great impropriety in holding that the governor might appoint and remove at his will and create as you might say an estate from month t’o month *409 in the office and thereby control the actions of these officers who have public duties m perform. Then if he must appoint for a term or for a definite time, the question arises for what time must he appoint. As we take it, and according to our view of the word “vacancy” as used in modern times, it relates not only to the office which is to be filled, but to the term for which the appointment is to be made. It is constantly used in statutes and constitutions with reference to both office and tenure, and we believe that the proper interpretation of the word when power is given to an executive or a board to fill a vacancy, is, a power to fill the office desig. nated for the unexpired term which may remain after the death, removal, or resignation of the antecedent incumbent. In other words, when the incumbent dies, is removed, or resigns, there is a vacancy not only in the office, but in the term for which he was appointed, if that was for a definite period. It usually happens that the legislature provides that the appointment shall.be for the unexpired term, to the next general election, or for such other period as their wisdom ’may dictate. In the absence, however, of an expression of the legislative will on the subject we think it is justly and rightly to be concluded that if the power of appointment is given to the executive to fill a vacancy in the recess of the senate and the statute is silent as to the duration of the appointment, and there is no restriction on his authority, and no requirement that it should be confirmed by any other body, then the grant of power is a grant of authority to fill it for the unexpired term. We therefore conclude that in the present case, when the statute says the governor may fill a vacancj in case of a recess of the senate by appointment in writing filed with the secretary of state, the legislative purpose was that he should appoint for the unexpired term and should not be required to submit the appointment to the incoming senate for confirmation just as his own office was about to expire and when the entire political complexion of that body might be changed and the public service be embarrassed by a change in its constitution three or four months *410 prior to the time the appointment would naturally determine by lapse of time. When we remember that these appointments are made by the incoming executive to take effect the 1st of June following and for two years, and that the governor goes out of office within a very few days of the time of the convening of the next legislature, we can very readily imagine the lawmaking body concluded it would be better to confer the absolute power of appointment upon the executive to fill the vacancy. Thus the discharge of these public duties would be left to the board which had been appointed by the executive on whose administration rested the responsibility for their acts.
The judgment of the court below accorded with these views, and it will accordingly be affirmed.

Affirmed.