Jim **TATUM** and Ann Tatum, Plaintiffs–Appellees,

v.

**BASIN RESOURCES, INC.,** Defendant–Appellant.

No. 03CA0750.

Colorado Court of Appeals, Div. I.

Nov. 17, 2005.

As Modified on Denial of Rehearing Feb. 23, 2006.

Certiorari Denied Aug. 28, 2006.

Burns, Figa & Will, P.C., Alix L. Joseph, Rachel T. Rowley, Englewood, Colorado, for Plaintiffs–Appellees.

Davis, Graham & Stubbs, LLP, William A. Bianco, Andrew M. Low, Denver, Colorado, for Defendant–Appellant.

KIRSHBAUM *, Justice.

Defendant, Basin Resources, Inc., appeals the trial court's judgment awarding plaintiffs, Jim and Ann Tatum (homeowners), $622,000 in damages plus costs and attorney fees. Homeowners request an award of reasonable attorney fees for this appeal. We affirm and remand with directions.

In 1986 homeowners purchased approximately 153 acres of real property in Las Animas County, Colorado, known as "Solitario Ranch." The property includes a two-story residence in which homeowners live; a bunkhouse; and various barns, corrals, and fences.

In May 1988 Basin's predecessor, Wyoming Fuel Company, began extracting coal from the Golden Eagle Mine, which is located near homeowners' property and extends beneath portions of Solitario Ranch. One of the working areas, First North, extended to within 300 feet southwest of homeowners' residence. Another working area was located approximately 1600 to 1700 feet northeast of the residence. Because of poor conditions in the mine, including a soft mine floor and large amounts of water entering the mine, in mid–1988 Wyoming Fuel Company ceased mining operations and allowed the mine to be flooded.

In 1991 Wyoming Fuel Company was renamed Basin Resources, Inc.

After the mine closed homeowners noticed damage to their residence. Subsequent investigations indicated the damages were attributable to subsidence in the Golden Eagle Mine's workings, and, in 1992, homeowners filed suit against Basin. They alleged various claims, including breach of contract, subsidence damage to their property, and damage caused by the construction of a ventilation shaft. Homeowners did not allege any future damages and did not request compensation for any possible prospective injury. Homeowners made certain repairs to their residence while the civil action was pending.

After a bench trial, the trial court found in favor of homeowners and in December 1997 awarded them damages of $48,000 based on diminution of property value due to subsidence damage. Basin satisfied the judgment and did not appeal the award.

Over the next three years homeowners did not detect any additional damage to the Solitario Ranch property. However, in 2000 homeowners noticed new cracks in the structure of their residence. In March 2001 they initiated this civil action against Basin, alleging that additional damage to the property had resulted from new subsidence in Basin's mine workings that occurred after December 1, 1997. Homeowners alleged that, pursuant to the Colorado Surface Coal Mining Reclamation Act, § 34–33–101, et seq., C.R.S.2005, and associated regulations, they were entitled to an award of damages based on Basin's failure to perform its common law duty to provide adequate subjacent support for the surface above the mine workings.

After a bench trial, the trial court concluded that homeowners' residence had suffered substantial and material subsidence damage after December 1, 1997; that such damage was caused by Basin's underground mining operations; and that the damage significantly reduced the value of the property. Determining that the diminution in value of the property equaled $670,000, the trial court awarded homeowners damages in the amount of $622,000, consisting of $670,000 less the $48,000 judgment awarded to them in December 1997.

I.

■ Basin first contends the trial court erred in finding that homeowners' recovery was not barred by principles of tort law governing permanent injuries to real property or, alternatively, by the doctrine of res judicata. We disagree.

Basin relies on the decisions in *Hoery v. United States*, 64 P.3d 214 (Colo.2003); *Colo-*

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

*rado National Bank v. Irvine,* 105 Colo. 588, 101 P.2d 30 (1940); and *Middelkamp v. Bessemer Irrigating Ditch Co.,* 46 Colo. 102, 103 P. 280 (1909). In those cases, the Colorado Supreme Court held that a plaintiff in an action for permanent injuries to land must recover all damages, past, present, and future, in one action. *See Middelkamp v. Bessemer Irrigating Ditch Co., supra.* Basin asserts the injury to homeowners' property is a continuing permanent injury and, therefore, homeowners may not recover more than the $48,000 sum they were awarded in 1997.

■ In *Hoery,* the court identified the following factors constituting a claim for permanent injury: (1) the structure causing the injury must be intended to be permanent, and the resultant property invasion must be one that will and should continue indefinitely; (2) the damage to the property must not be reasonably abatable without taking extraordinary measures; (3) the structure must have been constructed with lawful authority; and (4) the structure must be socially beneficial. Basin argues that these four factors were satisfied in the initial case, that the injury to homeowners' property established therein was therefore permanent, and that homeowners' cannot recover damages in excess of their December 1997 judgment. We are not persuaded.

■ In reviewing a final judgment, we are not bound by the trial court's conclusions of law. *Montemayor v. Jacor Communications, Inc.,* 64 P.3d 916 (Colo.App.2002). However, we defer to the trial court's findings of fact unless they have no support in the record. *See Peterson v. Ground Water Comm'n,* 195 Colo. 508, 579 P.2d 629 (1978).

Here the trial court determined that homeowners had established that a "second or subsequent incident of coal mine subsidence" had occurred to their residence after December 1, 1997. Homeowners' expert witness testified that the mine experienced a period of "dormancy" for approximately three years after the first incident of damage. Homeowner Ann Tatum testified that she and her husband did not notice any additional damage to their residence between mid–1997 and October 2000. Thus the evidence supports the trial court's factual determination. *See*

*Hoery, supra; Colo. Nat'l Bank, supra; Middelkamp, supra.*

■ The principle of permanent injury relied upon by Basin is confined to instances "where the property invasion will and should continue indefinitely because defendants, with lawful authority, constructed a socially beneficial structure intended to be permanent." *Hoery v. United States, supra,* 64 P.3d at 220.

*Middelkamp* and *Colorado National Bank* involved the discharge of water from irrigation ditches and reservoirs. *Denver & Santa Fe Ry. v. Hannegan,* 43 Colo. 122, 95 P. 343 (1908), arose in the context of the construction and maintenance of railroad lines that abutted residential homes. In those cases the structures causing damage to the plaintiffs' properties were deemed to be vital to the development of the state and the damages were determined to be necessary byproducts of the socially beneficial improvements.

The record supports the conclusion that damage to homeowners' residence occurring after December 1997 because of unpredicted and unforeseen additional subsidence in the mine does not constitute a pre-December 1997 property invasion that continued indefinitely. Furthermore, the continued infliction of material damage to residential properties as a result of subsidence in mine workings below the surface of the land does not present any significant benefit to the continued development of the state. In view of these considerations, we conclude the December 1997 injury was not a permanent injury.

It is not disputed that the development of natural resources, including coal mining operations, is an endeavor that significantly benefits state and national economies. Indeed, the General Assembly explicitly recognized this fact when it enacted the Colorado Surface Coal Mining Reclamation Act. *See* § 34–33–102, C.R.S.2005. Nonetheless, we would find it incongruous if homeowners should be required to sacrifice the structural integrity of their homes without reasonable compensation when the damages are unpredictable and occur at lengthy and unforeseeable intervals of time.

These conclusions are particularly appropriate here in light of the extensive evidence produced at trial establishing that the First North mine shaft of the Golden Eagle Mine was especially prone to dilapidation and degradation due to poor structural conditions. A former government official who inspected the Golden Eagle Mine while it was operational and a former mine supervisor testified that the First North portion of the mine suffered from substantial and extraordinary problems—including excessive retention of water and a poor mining floor surface—that created an extremely fragile and "soupy" platform on which to undertake mining operations. Given these findings, and consistent with the trial court's conclusions, we conclude the court properly allowed recovery here for the damage to homeowners' residence that occurred subsequent to December 1997.

■ We also conclude that recovery is not barred by the doctrine of res judicata. Res judicata precludes a claim that was or could have been raised in a previous litigation. *City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824 (Colo.1991). The doctrine will only be applied if in both proceedings there is identity of subject matter, identity of cause of action, identity of parties, and identity of capacity in the persons for whom or against whom the claim is made. *Turkey Creek Ltd. Liab. Co. v. Anglo Am. Consol. Corp.*, 43 P.3d 701 (Colo.App.2001).

Here, the trial court found, with record support, that homeowners suffered a second injury to their residence as a result of a second incidence of subsidence. Because homeowners base their present suit on a separate injury, there is no identity of subject matter between the two lawsuits. Thus, the doctrine of res judicata is inapplicable.

Basin argues that homeowners could have included a claim for future damages in their earlier suit. Under this reasoning, a homeowner would be required to speculate about what damages might occur in the future as a result of unknown causes, particularly subsidence. We are not convinced that in enacting the Colorado Surface Coal Mining Reclamation Act the General Assembly contemplated placing such a burden on homeowners harmed by an independent initial injury from subsidence in underground mine workings. Thus, we reject this argument.

## II.

■ Basin contends the judgment must be reversed because the trial court erred in admitting and relying upon the testimony of homeowners' expert witness concerning damages to homeowners' residence. Specifically, Basin claims that (1) the trial court abused its discretion in not issuing specific findings about the relevancy and reliability of the expert's opinions pursuant to CRE 702; (2) the expert witness failed to distinguish between damages occurring prior to December 1, 1997, and those occurring after that date; and (3) the expert witness's testimony that homeowners' land had no remaining value as a rural residential property was irrational and contrary to the undisputed facts. We disagree with this contention.

CRE 702 governs the admissibility of expert testimony. *Masters v. People*, 58 P.3d 979 (Colo.2002). The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ The determination of whether a witness is qualified to testify as an expert witness is committed to the discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Carder, Inc. v. Cash*, 97 P.3d 174 (Colo.App.2003). In the case of an expert witness possessing experienced-based specialized knowledge that is not dependent on a scientific explanation, a trial court must find that the testimony would be useful to the trier of fact and that the witness is qualified to render an expert opinion on the subject. CRE 702; *Salcedo v. People*, 999 P.2d 833 (Colo.2000); *Brooks v. People*, 975 P.2d 1105 (Colo.1999). In making this determination, a court must also necessarily find that the expert's proposed testimony is both relevant under CRE 402 and not unfairly prejudicial under CRE 403. *Salcedo v. People, supra; see also* CRE 402, 403.

At trial, Basin did not object to homeowners' witness testifying as an expert witness on matters of property valuation. Immediately following his testimony, however,

Basin moved to strike the testimony on grounds that it was based on assumptions that disregarded established facts in the record and utilized improper methodologies of property valuation. Basin subsequently reiterated those contentions and also argued that under CRE 702 and *Brooks v. People, supra*, the trial court was required to make specific findings concerning the relevancy and reliability of the witness's testimony. The trial court denied Basin's objections to the testimony.

■ We agree with Basin that, in general, when an objection is filed to the testimony of an expert witness on the ground that such testimony is based on improper legal and factual assumptions, *People v. Shreck*, 22 P.3d 68 (Colo.2001) and *Brooks v. People, supra*, indicate that the trial court should enter specific findings setting forth the reasons supporting the trial court's determination of the reliability and relevancy of such testimony pursuant to CRE 702. Nothing in those opinions or the rules of evidence suggests that different standards apply in cases involving scientific and nonscientific testimony.

■ However, we do not agree with Basin that the trial court's failure to make such specific findings in this case requires reversal. In denying Basin's objection the trial court impliedly determined that the testimony satisfied the requirements of CRE 702. The record here is sufficient to permit appellate review of the trial court's ruling. *See People v. McAfee*, 104 P.3d 226, 229 (Colo.App.2004); *People v. Johnson*, 74 P.3d 349 (Colo.App.2002). Furthermore, as this case was tried to the court, not to a jury, the presumption is that the trial court disregarded all incompetent and immaterial evidence. *See Michael v. John Hancock Mutual Life Ins. Co.*, 138 Colo. 450, 334 P.2d 1090 (Colo. 1959). Under these circumstances, we conclude that the failure to make specific findings respecting determinations of reliability and relevancy did not substantially influence the verdict or affect the fairness of the trial. We thus conclude that any error here is harmless. CRE 103(a); *see People v. Gaffney*, 769 P.2d 1081 (Colo.1989).

We also conclude that the record supports the trial court's denial of Basin's request to strike testimony of homeowner's expert witness on the grounds that such testimony was based on improper factual assumptions and improper methodology.

At trial, the expert witness testified that, absent any subsidence damage or threat of future subsidence damage, homeowners' residence would have an appraised fair market value of $850,000. The witness then testified that with the damage that had occurred and with an ongoing threat of subsidence damage present, the property would have a fair market value of $180,000 and would only be viable as agricultural land. On cross-examination, the expert conceded that his calculations assessed the diminution in property value as a whole since the time that homeowners first acquired the land and did not distinguish between loss in value prior to December 1, 1997, and loss in value after that date.

Basin argues the trial court erred in relying on this testimony because the expert witness was required to determine the fair market value of the property before the second incidence of subsidence and the fair market value after the second incidence, which he admittedly did not do. We do not agree.

In its December 19, 2002 judgment, the trial court, incorporating the calculations of homeowners' expert witness, determined the diminution in the value of homeowners' property according to a measure of damages "as specified by the Colorado Surface Coal Mining Reclamation Act, and regulations adopted pursuant to this Act." That statute contains the following relevant provision:

> If material damage results from subsidence caused by underground coal mining operations to any occupied residential dwelling and related structures or any noncommercial building, the operator of the underground coal mining operations conducted on or after April 7, 1995, shall either:
>
> (A) Promptly repair the damage by rehabilitating, restoring, or replacing the damaged occupied residential dwelling and related structures or noncommercial building; or
>
> (B) Compensate the owner of the damaged occupied residential dwelling and re-

lated structure or noncommercial building in the full amount of the diminution in value resulting from the subsidence.

Section 34–33–121(2)(a)(II)(A)–(B), C.R.S. 2005.

The applicable regulation of the Colorado Mined Land Reclamation Board for Coal Mining provides that a coal mining operator who causes material subsidence damage to a residential dwelling must either "[p]romptly repair, rehabilitate, restore, or replace damaged occupied residential dwellings" or "[c]ompensate the owner of the damaged occupied residential dwelling ... in the full amount of the diminution in value resulting from the subsidence." Mined Land Reclamation Bd. Reg. 4.20.3(b)(i)-(ii), 2 Code Colo. Regs. 407–2 (2003).

Pursuant to these provisions, the trial court determined the total diminution of homeowners' property value to be $670,000. To preclude any double recovery for the loss in value suffered prior to December 1, 1997, the court deducted the $48,000 homeowners had previously recovered from the diminution. We conclude the trial court's determinations are supported by the record. Therefore, the trial court did not err in relying on the expert's testimony.

### III.

Basin contends the trial court abused its discretion in sustaining homeowners' objection to Basin's effort to introduce evidence concerning homeowner Jim Tatum's attorney disciplinary record as character evidence to impeach his credibility. In support of its argument, Basin relies on *People v. Distel,* 759 P.2d 654 (Colo.1988); *United States v. Weichert,* 783 F.2d 23 (2d Cir. 1986); and *United States v. Whitehead,* 618 F.2d 523 (4th Cir.1980). We find no error.

A court may, in its discretion, admit evidence of specific instances of a witness's conduct on cross-examination if it is probative of truthfulness or untruthfulness. CRE 608(b); *People v. Jones,* 971 P.2d 243 (Colo. App.1998). As a general rule, however, specific instances of prior conduct may not be admitted as evidence to impeach the credibility of a witness. *People v. Caldwell,* 43 P.3d

663 (Colo.App.2001). In determining the admissibility of such impeachment evidence, the trial court must exercise its sound discretion to preclude inquiries that would have little bearing on the witness's credibility but would substantially impugn his or her character. *People v. Cole,* 654 P.2d 830 (Colo.1982).

The record establishes that homeowner Jim Tatum, an attorney, had been disciplined three times by three different federal and state courts. Two of those proceedings arose from (1) improper comments to a judge and (2) the untimely filing of an appellate brief. The third proceeding resulted in findings of failure to segregate client's funds, failure to deliver funds promptly when due to clients, failure to properly supervise an employee, and failure to disclose a potential conflict of interest.

Under these circumstances, we find Basin's authorities unpersuasive. In *Distel,* the lawyer had been disciplined as a result of allegations of deceit and misrepresentation. In *Weichert,* the court found that evidence of a twelve-year-old disbarment was not overly prejudicial. In *Whitehead,* in determining that a trial court's evidentiary ruling was erroneous but harmless, the court observed that evidence of attorney discipline may be admissible.

While the disciplinary proceeding involving commingling of funds, failure to deliver funds promptly to a client, improper supervision of an employee, and failure to disclose a conflict of interest may suggest prior untruthful or dishonest conduct, the other two disciplinary proceedings did not involve such conduct. On balance, we cannot conclude the trial court abused its discretion in sustaining homeowners' objection to Basin's effort to introduce all three proceedings into evidence.

### IV.

Basin finally contends the trial court erred in failing to rule that, following judgment, Basin could, at its option, elect to either repair homeowners' residence or pay homeowners for the diminution in fair market value of their property. We disagree.

In construing a statute, courts should not interpret it to mean that which it does not express. *Adams v. Safeco Ins. Co.,* 674 P.2d 999 (Colo.App.1983), *aff'd sub nom.*

*Krieg v. Prudential Prop. & Cas. Ins. Co.,* 686 P.2d 1331 (Colo.1984). Courts may not interpolate into a statute words that it does not contain, or extract a meaning which is not expressed by it. *Monash v. Rhodes,* 11 Colo.App. 404, 53 P. 236 (1898), *aff'd,* 27 Colo. 235, 60 P. 569 (1900).

We conclude, contrary to Basin's argument, that the Colorado Surface Coal Mining Reclamation Act and its associated regulations do not confer onto a defendant found to have caused subsidence damage to a plaintiff the power to elect which remedy to provide. *See* § 34–33–121(2)(a)(II)(A)–(B); Reg. 4.20.3(b)(i)-(ii).

Accordingly, we find no error on the part of the trial court.

■ Homeowners contend they are entitled to an award of reasonable attorney fees in connection with this appeal, noting that they were awarded attorney fees by the trial court. We agree with this argument. *See Levy-Wegrzyn v. Ediger,* 899 P.2d 230 (Colo. App. 1994). The amount of such fees is a matter for determination by the trial court.

The judgment is affirmed and the case is remanded to the trial court for a determination of the reasonable attorney fees to be awarded to homeowners for this appeal.

MARQUEZ and CASEBOLT, JJ., concur.